368 So.2d 1313 (1979)
FIDELITY & CASUALTY COMPANY OF NEW YORK, Appellant,
v.
Elsa GARCIA, a Minor through Her Parent and Natural Guardian, Heraoldo Garcia, Appellees.
No. 78-1091.
District Court of Appeal of Florida, Third District.
March 6, 1979.
Rehearing Denied April 16, 1979.
*1314 Corlett, Merritt, Killian & Sikes and Gerald E. Rosser, Miami, for appellant.
Stabinski, Funt, Levine & Vega, Miami, for appellees.
Before HAVERFIELD, C.J., and PEARSON and KEHOE, JJ.
PEARSON, Judge.
Fidelity & Casualty Company of New York was the plaintiff in an action for declaratory judgment. It sought a declaration concerning the coverage for its insured, Elsa Garcia, who was injured in an automobile-pedestrian accident. This appeal is from a final summary judgment finding that coverage was afforded to the injured minor claimant.
The facts appear without conflict by stipulation of the parties, and are set forth by the court in the judgment:
"1. That ELSA GARCIA had been a passenger in a truck owned and operated by Silvio Hidalgo.
"2. That Silvio Hidalgo had in full force and effect a policy of automobile liability insurance providing uninsured motorist coverage with Fideltiy and Casualty Insurance Company of New York.
"3. That Silvio Hidalgo stopped his truck in the south bound lane on East 8th Court, Hialeah, Dade County, Florida, in front of ELSA GARCIA's home located on the east side of said street.
"4. That East 8th Court is a two lane street with one lane for traffic south bound and one lane for traffic north bound.
"5. That ELSA GARCIA exited said truck from the right hand side passenger door and crossed directly in front of the truck toward the direction of her home.
"6. That after crossing in front of said truck and as she was walking toward her home, ELSA GARCIA was struck by a motor vehicle travelling south on East 8th Court attempting to pass the stopped truck on the left hand side of said stopped truck.
"7. That ELSA GARCIA was struck by the right front headlight section of said motor vehicle and ELSA GARCIA was within a few feet of the stopped truck on East 8th Court at the time of the impact."
The relevant policy terms involved in this case are contained in the "Definitions" portion of the insurance policy and are set forth below:
"(a) `insured' means: ... (2) any other person while occupying an insured automobile; ...
"(e) Occupying. The word `occupying' means in or upon or entering into or alighting from."
Only one Florida case has been cited for our guidance. In Industrial Fire & Casualty Ins. Co. v. Collier, 334 So.2d 148 (Fla. 3d DCA 1976), Collier was driving his automobile home from work and one of the tires became flat. During the time he was changing the tire, his car was truck by another automobile which caused his car to strike and injure him. At the time Collier was injured, he was standing outside his car, with it jacked up, removing the spare tire from it. This court held that Collier was "occupying" his car within the meaning of his policy with Industrial Fire. The decision relied for support upon the holdings of a list of cases from other jurisdictions. These decisions are not very helpful to us because they are concerned primarily with a determination of whether a particular insured is "occuping" an automobile. A common element in the cases cited is "physical contact" with the automobile, which the courts have considered as important in determining whether one is "occupying" the automobile.
It is clear from the cases cited by the parties here that other jurisdictions have not been able to define a test or a definite limit for the term "alighting from," which is the term here in issue. See Annot., 19 *1315 A.L.R.2d 513 (1951), and in particular A.L.R.2d Later Case Service updating this annotation. While the term is simple and has a good dictionary definition,[1] the application of the definition to the facts of the cases arising from its use in insurance policies shows that it may be ambiguous in a given situation. Cf. Wolf v. American Cas. Co. of Reading, Pa., 2 Ill. App.2d 124, 118 N.E.2d 777 (1954), cited with approval in Industrial Fire & Casualty Insurance Company v. Collier, 334 So.2d 148 (Fla. 3d DCA 1976). We, therefore, recognize the rule that the policy term must be given a liberal interpretation for the insured. See Stuyvesant Insurance Company v. Butler, 314 So.2d 567, 570 (Fla. 1975), and cases cited thereat.
Under such an interpretation, we must reject the physical contact test. It is unreasonable to hold that a person has completed the process of "alighting from" when that person has one foot on the ground and has released contact with the car. See Nickerson v. Citizens Mutual Insurance Company, 393 Mich. 324, 224 N.W.2d 896, 899 (1975); and cf. Saint Paul-Mercury Indemnity Company v. Broyles, 230 Miss. 45, 92 So.2d 252 (1957).
On the other hand, there must be a limit to the activity that can be said to be a part of "alighting from." Cf. Rice v. Allstate Insurance Company, 32 N.Y.2d 6, 342 N.Y.S.2d 845, 295 N.E.2d 647 (1973); and Carta v. Providence Washington Indemnity Company, 143 Conn. 372, 122 A.2d 734 (1956). We think that a rational limit to the activity that may be said to be encompassed within the term "alighting from" is the time and place at which the insured shows an intention, evidenced by an overt act based on that intention, to undertake a new direction or activity. See Carta v. Providence Washington Indemnity Company, supra at 737. See also Testone v. Allstate Insurance Company, 165 Conn. 126, 328 A.2d 686, 691 (1973); and Lautenschleger v. Royal Indemnity Company, 15 N.C. App. 579, 190 S.E.2d 406 (1972); and cf. Nelson v. Iowa Mutual Insurance Company, 163 Mont. 82, 515 P.2d 362, 364 (1973).
In the case now before us, the trial judge found that Elsa Garcia exited the truck from the right-hand side passenger door, thereafter walked to the front of the truck, crossing directly in front of it in "... the direction of her home." The trial judge then found that after crossing in front of the truck, and as she was walking toward her home, she was struck while entering the left-hand lane of the highway. Under these facts, Elsa had completed the act of "alighting from" the truck. She was engaged in a distinctly separate activity having nothing to do with the truck, that is, the crossing of a highway in order to go home. We hold that the activity of Elsa when struck by the passing automobile was too remote in time and place from the act of exiting the truck in which she had been a passenger to be considered as "alighting from" the truck. The summary judgment entered must, therefore, be reversed inasmuch as the trial judge applied an erroneous rule of law in holding the plaintiff liable under the policy of insurance as a matter of law.
Reversed and remanded for further proceedings in accordance with the views herein expressed.
Reversed.
NOTES
[1] "alight ... (1) to spring down, get down, or descend, as from a horse's back or from a carriage; to dismount ..." Webster's New International Dictionary of the English Language (2nd Edition 1960)

"Alight ... II Referring chiefly to the result: To land. 4. To get down from a horse or conveyance; to dismount or descend for the time; to finish one's ride, stop." The Oxford English Dictionary, Vol. I (Clarendon Press 1933)