JOINS, A MINOR, APPELLANT, ET AL., *v.* BONNER, APPELLEE, ET AL.

[Cite as Joins *v.* Bonner (1986), 28 Ohio St. 3d 398.]

(No. 86-362—Decided December 30, 1986.)

*Payne & Payne* and *William S. Derkin,* for appellant.

*Laurence F. Buzzelli* and *Marilyn J. Singer,* for appellee.

CLIFFORD F. BROWN, J. The trial court, and the court of appeals, in essence held that the provisions of the policy would exclude coverage here. Construing the term "alighting from," as found in the definition of "occupying" in the policy, the courts below found the term inapplicable to Brian Joins because he had no physical contact with the Bonner automobile at the time of the injury, was not undertaking any endeavor connected with the automobile, and was not "vehicle oriented." Instead, as concluded by the appellate court below, he "had completed his exit and had moved away from the motor vehicle and was headed for the opposite curb and, thus, was more oriented to the street than to the Bonner vehicle at the time of the accident."

In support of his construction of this term in the policy, appellant contends a person is "alighting from" an automobile if that person is within a reasonable proximity to the vehicle. To buttress his contention, appellant relies upon *Kantola* v. *State Farm Ins.* (1979), 62 Ohio Misc. 11 [16 O.O.3d 380]; *Robson* v. *Lightning Rod Mut. Ins. Co.* (1978), 59 Ohio App. 2d 261 [13 O.O.3d 268]; and *Halterman* v. *Motorists Mut. Ins. Co.* (1981), 3 Ohio App. 3d 1 [32 O.O.2d 29].

In this case the passenger, Brian Joins, exited the passenger side of the insured automobile, crossed in front of this automobile, and in proceeding to cross the street to the opposite curb, was struck by an uninsured vehicle at a point about seven feet from the opposite curb. When, as here, a passenger who exits an insured vehicle and proceeds immediately to cross the street in front of such car to the opposite curb and, before reaching the opposite curb, is struck and injured by an uninsured vehicle, such passenger is "alighting from" such insured vehicle within the meaning of such terms in the uninsured motorist coverage provision of the insurance policy. The course of conduct of "alighting from" an automobile includes reaching the opposite side of the street safely since it is a course of conduct reasonably incident to exiting and alighting from an automobile. Crossing the street to a position of safety is within the time framework which could be reasonably expected. *Kantola* v. *State Farm Ins., supra,* at 13; *Whitmire* v. *Nationwide Mut. Ins. Co.* (1970), 254 S.C. 184, 174 S.E. 2d 391. This principle recognizes the fact that a person is not "finished" with exiting a vehicle until he or she reaches a place of safety on the side of the street or road to which he or she is proceeding.

That Brian Joins exited an automobile rather than a school bus, as in *Kantola, supra,* is an immaterial factual difference and both cases should require application of the same standard of liability.

In construing uninsured motorist provisions of automobile insurance policies which provide coverage to persons "occupying" insured vehicles, the determination of whether a vehicle was occupied by the claimant at the time of an accident should take into account the immediate relationship the claimant had to the vehicle, within a reasonable geographic area. *Robson* v. *Lightning Rod Mut. Ins. Co., supra,* at 264. Here the passenger, Brian Joins, was within a reasonable geographic area of the vehicle from which he had exited and therefore was in the process of "alighting from" it. "Language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." *Buckeye Union Ins. Co.* v. *Price* (1974), 39 Ohio St. 2d 95 [68 O.O.2d 56], syllabus.

Accordingly, the judgment of the court of appeals is reversed, and this court finds that plaintiff-appellant falls within the definition of "occupying" under the Bonner insurance policy, and the cause is remanded to the common pleas court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CELEBREZZE, C.J., SWEENEY and DOUGLAS, JJ., concur.

LOCHER, HOLMES and WRIGHT, JJ., dissent.

HOLMES, J., dissenting. I cannot agree with the decision of the majority which establishes the unduly broad "reasonable proximity" test and others as a measure of whether one is "alighting from" a vehicle. Moreover, even under its own standard, there should not be any question that the policy excludes coverage for injury caused by the uninsured motorist herein.

The policy provision at issue requires that an injured party be one who is "occupying an insured automobile." The insurer has enlarged the application of this reasonable limitation by including coverage for one who is "entering into or alighting from" the automobile. Rather than applying the ordinary understanding of the term "alighting from" or even the carefully defined and limited judicial expansions upon such ordinary meaning, the majority has instead created the wholly amorphous and undefined "within a reasonable proximity to the vehicle" analysis.

This test suffers from a number of defects, the most immediately obvious being that it has no relationship whatsoever to whether one is an occupant of an automobile or is entering or exiting an automobile. Also, under the analysis of the majority, one need not even be standing near the automobile, for the injured child in this case had walked approximately sixteen feet from the point at which he exited the car to the place where he was struck. This distance cannot realistically be characterized as being within a reasonable proximity to the vehicle.

A better rule was set forth in *In re Allstate Ins. Co.* v. *Flaumenbaum* (1970), 62 Misc. 2d 32, 308 N.Y. Supp. 2d 447. Therein, the injured party was taken to his destination via a taxicab. Upon arriving, he exited the taxi and, while paying his fare, was indirectly struck and injured by another motorist. Impliedly rejecting the physical contact test, the court stated:

"* * * [A] person has not ceased 'occupying' a vehicle until he has severed his connection with it—*i.e.,* when he is on his own without any reference to it. If he is still *vehicle-oriented,* as opposed to highway-oriented, he continues to 'occupy' the vehicle." (Emphasis added.) *Id.* at 46, 308 N.Y. Supp. at 462.

The more reasonable test is whether the position or act of the injured party at the time of the accident was vehicle-oriented, or otherwise oriented, as stated in *Flaumenbaum, supra,* and referred to herein by Judge John V. Corrigan in the decision of the court of appeals below. Basically utilizing such a test, the court in *Fischer* v. *Aetna Ins. Co.* (1971), 65 Misc. 2d 191, 317 N.Y. Supp. 2d 669, denied recovery when the injured plaintiff parked his car in a parking lot and walked twenty-five feet in order to administer first aid to an injured person on the highway. While walking to a fire box, the good Samaritan was struck by a hit-and-run motorist. His claim, premised upon having been struck while "alighting from" his vehicle, was denied since he was no longer alighting from the vehicle, but instead was struck while attempting to aid a person in distress.

Likewise, in *Ins. Co. of North America* v. *Perry* (1964), 204 Va. 833, 134 S.E. 2d 418, recovery was denied to a police officer who was struck and injured after parking his car and walking one hundred and sixty-four feet to serve a warrant. Recovery was denied when the court concluded, as a matter of law, that the deputy's injuries were not sustained "while he was using the police cruiser." *Id.* at 838.

A case which is most indistinguishable from the case at bar is *Fidelity & Cas. Co. of New York* v. *Garcia* (Fla. App. 1979), 368 So. 2d 1313. In *Garcia,* the plaintiff was a passenger in a vehicle proceeding south on a two-lane street. After the vehicle stopped, the plaintiff exited the passenger side. She proceeded to cross the southbound lane in front of the vehicle in order to reach her home on the other side of the street. While crossing the northbound lane, she was struck and injured by a motor vehicle attempting to pass the vehicle from which she had exited. As in the present case, the policy of insurance defined "insured" to include "any other person while occupying an insured automobile." The term "occupying" was defined as "in or upon or entering into or alighting from." *Id.* at 1314.

In reviewing the judgment of the lower court finding that the plaintiff was within the policy provisions, the Florida Court of Appeals reasoned that "there must be a limit to the activity that can be said to be a part of 'alighting from.'" *Id.* at 1315, citing *Rice* v. *Allstate Ins. Co.* (1973), 32

N.Y. 2d 6, 342 N.Y. Supp. 2d 845, and *Carta* v. *Providence Washington Indemnity Co.* (1956), 143 Conn. 372, 122 A. 2d 734. Continuing, the court stated: "* * * [T]hat a rational limit to the activity that may be said to be encompassed within the term 'alighting from' is the time and place at which the insured shows an intention, evidenced by an overt act based on that intention, to undertake a new direction or activity." *Id.,* citing, *inter alia, Carta* v. *Providence Washington Indemnity Co., supra;. Testone* v. *Allstate Ins. Co.* (1973), 165 Conn. 126, 328 A. 2d 686; *Lautenschleger* v. *Royal Indemnity Co.* (1972), 15 N.C. App. 579, 190 S.E. 2d 406.

Based upon the aforementioned standard, the Florida court concluded that the plaintiff had completed the act of "alighting from" the vehicle, and that she was injured when she undertook a separate and distinct act not even remotely connected with the vehicle from which she had departed. That separate and distinct act was simply her intention to cross the street in order to reach her home located on the other side.

Likewise, in the present case, Joins had completed the act of "alighting from" the passenger side of the vehicle and had manifested, by an overt act, an intention to undertake a new and different activity, that being to cross the street in order to reach a residence located on the other side. Furthermore, Joins did not seek the nearest place of safety, but instead chose to enter a place of danger. Such being the case, it is not the function of this court to rewrite the insurance policy in order to secure for the plaintiff more favorable terms not included within the existing policy of insurance, nor is it the function of this court to create an ambiguity where none exists. *Tyler* v. *Ins. Co. of North America* (D. Ala. 1974), 381 F. Supp. 1356, 1359.

The majority, in arriving at its conclusion herein, announces no less than six additional standards upon which it relies. All of these presuppose some permissible expansion of the relationship which the injured must have to the automobile in order to be covered. Several of these allow that the party who exits the automobile must have the opportunity to: (1) reach the nearest place of safety, (2) reach the other side of the street if he is moving in that direction, and (3) reach the place to which he is proceeding. Further, the injured person may be covered if he is injured "within the time framework which could reasonably be expected," or if there is an "immediate relationship" which the claimant has to the auto. Finally, we are presented with a standard which is based on the "course of conduct reasonably incident to exiting *and* alighting from an automobile." (Emphasis added.) Such a confusing morass of partially analyzed, multiple and contradictory standards surely demonstrates that the majority does not seek the appropriate standard of analysis, but a result.

The majority places particular reliance upon *Kantola* v. *State Farm Ins.* (1979), 62 Ohio Misc. 11 [16 O.O.3d 380]; *Robson* v. *Lightning Rod Mut. Ins. Co.* (1978), 59 Ohio App. 2d 261 [13 O.O.3d 268]; and *Halterman* v. *Motorists Mut. Ins. Co.* (1981), 3 Ohio App. 3d 1. A careful review and

examination of these cases demonstrates that they are inapplicable to the subject cause.

In *Kantola,* a child, exiting a school bus on the west side of the highway, was struck by a motor vehicle while he was attempting to reach the east side of the road. As in this case, the sole issue presented was whether the injured child was "occupying," in the sense of "alighting from," the school bus at the time he sustained his injuries. In concluding that the child sustained the injuries while "alighting from" the school bus, the trial court appropriately reasoned at 13:

"It is the court's opinion that 'alighting from' a school bus means to reach a place of safety. In this case a pupil was exiting from a school bus and the act of exiting from a school bus continues until the pupil reaches a place of safety on the residence side of the road. The course of conduct of 'alighting from' a school bus includes reaching the side of the street of the pupil's residence * * * with the stopped school bus as a protective measure * * *."

The rationale supporting the holding in *Kantola* is predicated upon the injury having been sustained while the child was still in the process of alighting *from a school bus.* It may be reasonably concluded that when a child crosses a highway to either board or exit a school bus, the entire process is surrounded by peril. Accordingly, the General Assembly enacted statutory provisions to safeguard such process.

Two such provisions are R.C. 4511.75(A) and (E). Division (A) requires that any driver who meets or overtakes a school bus "from either direction," when the bus is "stopped for the purpose of receiving or discharging any school child * * * shall stop at least ten feet from the front or rear of the school bus and shall not proceed until such school bus resumes motion * * *." Division (E) commands that "[n]o school bus driver shall start his bus until after any child * * * who may have alighted therefrom shall have reached a place of safety * * *." As was recognized in *Westerfield* v. *LaFleur* (La. 1986), 493 So. 2d 600, "[t]he child, the bus and the bus driver are constituents of this process, bound together legally and practically in a special, exigent relationship, from the moment the bus stops and signals until the child is [either] safely aboard" (or has reached a zone of safety after exiting). See, also, *Culwell* v. *Brust* (1949), 91 Ohio App. 309 [48 O.O. 398]. Consequently, the state of Ohio has, in this special situation, statutorily expanded the zone of protection well beyond the mere exiting from the school bus and now allows the school child to exit, walk around in front of the bus, and to cross to the other side of the street.

In the case here, there was no exit from a school bus and, therefore, the zone of safety forming the basis for the holding in *Kantola* does not exist. Accordingly, while the injured child could be said to have been "alighting from" the vehicle in *Kantola,* that case does not compel, nor constitute authority for, a similar result herein.

Similarly, the majority's reliance on *Halterman* is not persuasive. In that case, the court of appeals addressed the issue of whether the injured

party was "upon" the automobile pursuant to a policy of insurance which, as here, defined "occupying" as "in or upon or entering into or alighting from" a vehicle. The injured party who had exited from the automobile was at the rear of the vehicle siphoning gasoline from a can, which was resting on top of the trunk of the vehicle, into its gas tank when he was struck from the rear by an uninsured motorist. The focus of the court's attention was on whether Halterman was "upon" the vehicle while siphoning the gasoline, not whether he was "alighting from" the vehicle. As such, that case provides little specific guidance to aid in our determination.

Likewise, *Robson, supra,* provides meager support for the majority's position since the court, although considering the full spectrum of views, was dependent upon the fact that the injured party had his arms and upper body inside the vehicle when he was struck. Thus, the above cases do not aid this court in its determination of whether Joins was "alighting from" the vehicle at the time he was struck and injured by the uninsured motorist.

A great deal of litigation has emerged to determine whether, under a multitude of fact patterns, a party is "occupying" a vehicle if he is "in or upon or entering into or alighting from" such vehicle. See, *e.g.,* Widiss, A Guide to Uninsured Motorist Coverage (Supp. 1981) 44, Section 2.11; Annotation, Automobile Insurance: When is a Person "Occupying" an Automobile within Meaning of Medical Payments Provision [?] (1972), 42 A.L.R. 3d 501. Although the term "alighting from" appears to be clear, concise and easily definable, "* * * the application of the definition to the facts of the cases arising from its use in insurance policies shows that it may be ambiguous in a given situation." *Fidelity & Cas. Co. of New York* v. *Garcia, supra,* at 1315, citing *Wolf* v. *American Cas. Co. of Reading, Pa.* (1954), 2 Ill. App. 2d 124, 118 N.E. 2d 777, and *Indus. Fire & Cas. Ins. Co.* v. *Collier* (Fla. App. 1976), 334 So. 2d 148. Thus, since the language in the insurance contract is susceptible to more than one meaning, it should be liberally construed in favor of the party seeking coverage under the policy. Accord *Buckeye Union Ins. Co.* v. *Price* (1974), 39 Ohio St. 2d 95 [68 O.O.2d 56]; *Butche* v. *Ohio Cas. Ins. Co.* (1962), 174 Ohio St. 144 [21 O.O.2d 418]. However, it is generally accepted law that the aforementioned rule "cannot be used either to create ambiguity where there is none *or to make a new and different contract for the parties.*" (Emphasis added.) *Tyler* v. *Ins. Co. of North America, supra,* at 1359.

Since Joins had unquestionably completed the act of "alighting from" the vehicle and had embarked upon a new and different course of conduct whereby he was attempting to cross the street, I would conclude that his activity was too remote from his having exited the vehicle to be considered as "alighting from" the vehicle at the time he sustained his injuries.

Accordingly, I would affirm the judgment of the appellate court denying the claim made under the insurance policy.

LOCHER and WRIGHT, JJ., concur in the foregoing dissenting opinion.