Steven P. ROBERTS, Plaintiff,

v.

GEICO and State Farm Mutual Automobile Insurance Company, Defendants.

Civ. A. No. 87–0450–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

June 8, 1988.

Bernard S. Cohen, Alexandria, Va., for plaintiff.

David B. Hart, Roanoke, Va., for GEICO.

---

James F. Johnson, Roanoke, Va., for State Farm.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case presents a unique situation where the result depends on the meaning of one word to determine primary and secondary underinsured motorist coverage. If the plaintiff was "alighting" from the vehicle when struck by the passing motorist, he is a guest and covered primarily by the State Farm insurance policy. If he had already "alighted" from the vehicle, then he is primarily covered by his own GEICO policy. Looking to all the facts and circumstances of this peculiar situation in light of the uninsured motorist coverage required by Va.Code § 38.2–2206 (1986), the court concludes Roberts was still alighting when injured.

## FINDINGS OF FACT

Early in the cold morning of January 19, 1985 at approximately 1:30, Steven P. Roberts (Roberts) and Gayle Newman (Newman), both of whom were students at Virginia Polytechnic Institute–State University (VPI–SU), left a closed "rush" party at the Phi Kappa Sigma fraternity house on the VPI–SU campus to return to their respective dormitories. Roberts was "rushing" the fraternity while Newman had been invited as a "little sister." In an effort to take their minds off the bitter Southwestern Virginia cold, Roberts and Newman "started to goof around and try car doors just for no good reason, out of silliness." Newman Deposition at 7. Robert Powell, a Phi Kappa Sigma brother who was also leaving the party, observed Roberts and Newman just as they tried to open one of the doors to his 1973 Volkswagen vehicle. Powell shouted to them, asking what they were doing. They replied that they were merely "goofing around." Next, Powell either offered to give Roberts and Newman a ride home, or they requested one. Regardless, Powell assumed the duty to take them home. The three entered the vehicle along with two other women accompanying

Powell and proceeded towards the dormitories.

Powell drove his car west to a point on Washington Street just before the intersection of Kent Street in front of Lee Hall which was halfway between Ambler Johnson dormitory where Roberts resided and Newman dormitory where Newman resided. All parking spaces along the side were occupied so Powell double-parked to allow his two passengers to disembark. Powell got out of the driver's seat to open the left rear door because it was difficult to open from the inside and to address Roberts about the earlier incident of opening the door to his car. The three stood in the middle of Washington Street in a triangular formation with Powell facing west and Newman and Roberts facing east. Powell and Newman were standing closest to the car with Roberts closest to the double yellow dividing line. Before or as Powell finished addressing Roberts, an eastbound vehicle struck Roberts and Newman. Powell stated he saw the approaching vehicle at the last moment and grabbed both to pull them out of the road, but the event occurred so quickly and the force of impact was so strong that Roberts was knocked out of his hand and hurled through the air. Although both were injured, Roberts has allegedly sustained vision loss, back injuries and brain damage. Stephen Wayne Butlin, the driver of the vehicle which struck Roberts, was allegedly speeding and intoxicated.

Roberts filed suit against Butlin for negligence and punitive damages in the Circuit Court for the City of Chesapeake, Virginia. He also filed suit in Montgomery County, Virginia against the Government Employees Insurance Company (GEICO), the insurer of both Roberts and Butlin, and State Farm Mutual Automobile Insurance Company (State Farm), the insurer of Powell. The suit seeks a judgment order declaring which insurance carrier provides primary underinsurance coverage and which one provides secondary coverage for Roberts' injuries. GEICO had the case removed to this court. The parties have all filed motions for summary judgment. Because no

issue of material fact is in dispute, the court now rules on the merits of the motions.

### CONCLUSIONS OF LAW

The courts that have considered the issue have developed three tests for determining whether someone is alighting from a vehicle for purposes of an automobile insurance policy. The first of these, the distance test, was apparently applied by the Virginia Supreme Court in *Insurance Company of North America v. Perry,* 204 Va. 833, 134 S.E.2d 418 (1964). In this case, Peterson, a Norfolk City policeman, had parked his police cruiser along Virginia Beach Boulevard, placed the keys in his pocket and walked 164 feet from the cruiser to serve a warrant when he was struck by another vehicle. The court ruled that "[u]nder these circumstances, we hold, as a matter of law that Peterson's fatal injury did not occur while he was using the police cruiser. He was not then an insured under the policy. He was not then under the canopy of the coverage provided by the statute." *Id.* at 838, 134 S.E.2d at 421. The result was so obvious that the court did not need to consider the parameters of the act of alighting from a vehicle. Therefore, this court does not read *Perry* as adopting the distance test to exclusively govern cases such as this where a guest is alighting from a vehicle when injured.

In *Day v. Coca Cola Bottling Co., Inc.,* 420 So.2d 518 (La.Ct.App.1982), the court used a time and distance analysis. It held that Day was alighting from the truck as he was never more than twenty-four inches from it and no more than several seconds had elapsed from the time he parked the truck until he was struck. *Id.* at 520. Nevertheless, this court believes that one cannot measure alighting solely in terms of minutes or seconds and feet or inches. Other factors should be considered.

In *Joins v. Bonner,* 28 Ohio St.3d 398, 504 N.E.2d 61 (1986), the court employed a place-of-safety test, holding that Joins had not alighted until he had crossed the street to a position of safety. The problem with this test is that determining when a person has reached a zone of safety is a rather arbitrary decision. There are instances where a place of safety is important. For example, the dissent in *Joins,* as an apposite application of the place-of-safety test, points to the situation where children are getting off a school bus and the driver is required not to leave until the children have reached a place of safety. *Id.* at 405, 504 N.E.2d at 66. Another example would be a motorist with a 90–year old arthritic woman passenger with failing eyesight who walked with a cane. As long as the driver had not completely assisted her in crossing the road she would still be alighting. This test, however, could produce different and arbitrary results. For example, this would certainly be true in the case of an athletic young man with keen eyesight. As with the other two tests, the court believes the place-of-safety test is also unsatisfactory.

The best analytical framework for deciding the issue is that adopted in *Whitmire v. Nationwide Mutual Ins. Co.,* 254 S.C. 184, 174 S.E.2d 391 (1970). The court ruled that Whitmire was alighting when, after exiting the passenger side of the vehicle on the dangerous side of the highway and seeing the oncoming vehicle through the windshield and rear window, he was proceeding promptly to the shoulder of the highway.

> Where the act of alighting is completed is uncertain. It must be determined under the facts of each case, considered in the light of the purpose for which coverage is afforded. Its meaning must be related to the particular use of the automobile and the hazards to be encountered from such use.

*Id.* at 191, 174 S.E.2d at 394. The word "alighting" is not ambiguous; it merely varies from case to case. Because of the limitations of the other tests, this court believes a Virginia court would consider all the facts and circumstances in light of § 38.2–2206 to determine whether Roberts was alighting from the vehicle when struck by Butlin. *Cf. State Farm Mut. Auto Ins. Co. v. Powell,* 227 Va. 492, 501, 318 S.E.2d 393, 397 (1984) (court looked to facts and circumstances of situation to determine

whether person was "using" truck when weapon in gun rack discharged to determine insurance coverage).

Several key findings of fact compel the court to rule that Roberts was indeed alighting when he was struck by Butlin. First, Roberts was Powell's guest in his vehicle. It makes no difference whether Roberts requested the ride or Powell offered it. Either way, Powell assumed the responsibility of taking Roberts home. Second, Powell's car had a stuck door. It is not clear whether Roberts or Newman tried to open it or whether Powell knew they could not and proceeded to assist them. Regardless, he opened a door on the most dangerous side—where other vehicles could strike them. Third, Roberts disembarked by means of Powell's assistance. Fourth, once Roberts and Newman were out of the car and standing on the street, Powell stopped Roberts by engaging him in conversation. The driver of the vehicle approaching from the west, who was an eye witness to the incident, stated in an affidavit that he watched them in conversation and the entire unloading process took at least a minute. Powell's conversation was what kept Roberts in the middle of the road. If he had not stopped them at that point, they probably would have safely crossed the road.

The fact that Roberts was not touching the car when he was injured is irrelevant. *Cf. Pennsylvania National Mutual Cas. Ins. Co. v. Bristow*, 207 Va. 381, 150 S.E.2d 125 (1966) (mere fact Good Samaritan was touching stalled vehicle when struck does not mean he was "upon" the vehicle in the sense of occupying it for purposes of uninsured motorist coverage). The policy provides that occupying includes those "in or upon entering into or alighting from." If alighting requires a physical contact, the word is superfluous with the "in or upon entering" language. "No word [in a contract] ... will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words aimlessly." *Winn v. Aleda Const. Co., Inc.*, 227 Va. 304, 307, 315 S.E.2d 193, 195 (1984). Indeed, the South Carolina Court in *Joins*, stated:

If the phrase 'alighting from' is limited to the physical act of descending from the automobile, it would be meaningless because a person would still be in contact with it and within the coverage afforded under the terms 'in' or 'upon.' 'Alighting from' must, therefore, extend to a situation where the body has reached a point when there is no contact with the vehicle.

254 S.C. at 191, 174 S.E.2d at 391.

Finally, the court looks to the purpose of the uninsured motorist statute to interpret the policy language and determine whether Roberts was "under the canopy of the coverage provided by the statute." *Perry*, 204 Va. at 838, 134 S.E.2d at 421. The statute specifically defines an insured as a guest in the motor vehicle. Va.Code § 38.2-2206(B). Clearly, the legislature intended this uninsured motorist provision to cover this situation. The contract of insurance should therefore be construed to give effect to this legislative intent. *See id.*

## CONCLUSION

Looking to all the facts and circumstances in this case in view of the purpose of the statute, the court concludes Roberts was still in the act of alighting when struck by Butlin and was therefore occupying the Powell vehicle. Powell knew or should have known the danger of engaging Roberts in conversation in the road. Since he assumed the obligation of taking Roberts home, opened the door for him and prevented him from leaving the street to go home, Roberts was still alighting from the automobile as a guest in the vehicle. The court grants summary judgment to GEICO and the plaintiff and denies summary judgment to State Farm.