FARM BUREAU TOWN AND COUNTRY INSURANCE COMPANY OF MISSOURI, Respondent,

v.

Bill O. SCHMIDT, Sr., et al., Appellants.

No. 70023.

Supreme Court of Missouri, En Banc.

June 14, 1988.

1. In pertinent part, § 304.050 reads as follows:

    1. The driver of a vehicle upon a highway upon meeting or overtaking from either direction any school bus which has stopped on the highway for the purpose of receiving or discharging any school children and whose

John A. Clayton, Rolla, for appellants.

Ronald R. McMillin and Mark A. Ludwig, Jefferson City, for respondent.

DONNELLY, Judge.

This is a suit for declaration of rights and duties under uninsured motorist provisions of an automobile insurance policy.

On December 3, 1984, at approximately 3:15 p.m., Bill Orville Schmidt, Jr., was transported from school on a school bus. The bus traveled west on Highway 50 in Gasconade County and stopped in the westbound lane with red lights flashing. Bill stepped from the bus and was struck by an uninsured automobile while crossing Highway 50 on his way home.

The question is whether Bill was "alighting from" the bus when he was struck by the uninsured motorist.

The trial court found that Bill was not covered. The Eastern District of the Court of Appeals affirmed. This Court ordered transfer and we reverse and remand.

The general rule applicable here was stated in *Carta v. Providence Washington Indemnity Company*, 143 Conn. 372, 122 A.2d 734, 737 (1956):

> A person is not in the process of alighting if, at the time, he has completed all acts normally performed by the average person in getting out of an automobile under similar conditions and if he has embarked upon a course of conduct entirely distinct from acts reasonably necessary to make an exit from the car. Such an act of embarking cannot logically be converted into an act of alighting.

However, the *Carta* rule does not answer the question raised on this appeal. The General Assembly of the State of Missouri has defined the zone of protection which shall be accorded a child alighting from a school bus. *See* § 304.050, RSMo 1986.[1] In practical terms, this zone of pro-

driver has in the manner prescribed by law given the signal to stop, shall stop the vehicle before reaching such school bus and shall not proceed until such school bus resumes motion, or until signaled by its driver to proceed.

\*   \*   \*   \*   \*   \*

tection continues until the child "has crossed any immediate road and is in a place of safety in a direction towards [his/her] home." *Georgia Farm Bureau Mutual Insurance Company v. Greene,* 174 Ga.App. 120, 329 S.E.2d 204, 208 (1985). *See, Kantola v. State Farm Insurance,* 62 Ohio Misc. 11, 405 N.E.2d 744 (1979). *Cf. Westerfield v. LaFleur,* 493 So.2d 600 (La. 1986); *Eden Prairie Independent School District v. Auto–Owners Insurance Company,* 279 N.W.2d 358 (Minn.1979); *Cawthon v. Waco Fire & Casualty Insurance Company,* 183 Ga.App. 238, 358 S.E.2d 615 (1987).

The law governing construction of automobile insurance policies is well-established in Missouri:

> All provisions of the policy must be given their plain and reasonable meaning, and all parts thereof must, if possible, be harmonized and given effect in order to accomplish the intention of the parties. But an insurance policy, being a contract designated to furnish protection, will, if reasonably possible, be construed so as to accomplish that object and not to defeat it. Hence, if the terms are susceptible of two possible interpretations and there is room for construction, provisions limiting, cutting down, or avoiding liability on the coverage made in the policy are construed most strongly against the insurer.

*Varble v. Stanley,* 306 S.W.2d 662, 664–665 (Mo.App.1957) (footnotes omitted).

In our view, Bill Orville Schmidt, Jr., was alighting from the school bus when he was struck by the uninsured motorist.

The judgment is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

BLACKMAR, RENDLEN and HIGGINS, JJ., and MORGAN, Senior Judge, concur.

ROBERTSON, J., dissents in separate opinion.

WELLIVER, J., dissents and concurs in separate dissenting opinion of ROBERTSON, J.

BILLINGS, C.J., not sitting.

ROBERTSON, Judge, dissenting.

This case involves the interpretation of a contract of insurance. The majority opinion lifts the words "alighting from" from the context of the contract, declares them susceptible of several interpretations, and finds coverage. Yet the phrase "alighting from" is but a definition of the phrase "others occupying" the insured vehicle. Read in context, as it should be, I do not believe "alighting from" can be given the expansive reading assigned it by the majority.

A unanimous panel of the Court of Appeals, Eastern District, filed an opinion affirming the trial court's judgment. Judge Harold Satz's opinion reflects my views in this case by carefully considering the contractual language in context. His work, which follows without further attribution, is adopted as my dissenting opinion in this case.

One definition of an insured in Farm Bureau's policy is "others occupying" the insured vehicle. "Occupy" is defined as being "in or upon, entering into or alighting from the insured vehicle." On appeal, the sole question is whether Bill was "alighting from" the bus when he was struck by the uninsured motorist.

In Missouri, our courts have not determined the meaning of "alighting from" a vehicle as used in the policy clause in question. The Court of Appeals, however, has determined the meaning of "entering into" a vehicle in an identical clause. *State Farm Mutual Auto. Ins. Co. v. Farmers Ins. Co.,* 569 S.W.2d 384 (Mo.App.1978). In so doing, the court said the descriptive terms used to define "occupancy" do not make that definition ambiguous. *Id.* at 386. The court also noted the different descriptive terms contemplate different situations, "although a given situation could

---

3. The driver of a school bus in the process of loading or unloading students upon a street or highway shall activate the mechanical and electrical signaling devices, in the manner prescribed by the state board of education, to communicate to drivers of other vehicles that students are loading or unloading. * * *.

encompass two or even three of the [termsl."[1] *Id.* at 386.

As commonly understood, "alight" simply means to get down or descend from.[2] "Alighting from", however, as used in the clause in question, cannot sensibly be limited to the physical act of descending from the insured vehicle. The terms "in" and "upon" are also used in the clause, and these two terms are consistently said to contemplate a person having some physical contact with the insured vehicle at the time of the injury. *See, e.g., Whitmire v. Nationwide Mut. Ins. Co.,* 254 S.C. 184, 174 S.E.2d 391, 394 (1970); *see also Fidelity & Cas. Co. of N.Y. v. Garcia,* 368 So.2d 1313, 1315 (Fla.App.1979). Thus, "alighting from" would be meaningless if it too were limited to physical contact with the insured vehicle. *Whitmire v. Nationwide and Fidelity v. Garcia, supra.*

It would be equally unreasonable to hold a person has completed the process of "alighting from" when he has one foot on the ground and has just released his contact with the insured vehicle. *See, e.g., Fidelity & Cas. Co. of N.Y. v. Garcia, supra* at 1315; *Nickerson v. Citizens Mut. Ins. Co.,* 393 Mich. 324, 224 N.W.2d 896, 899 (1975). On the other hand, there must be some limit to the activity which rationally can be characterized as "alighting from" the vehicle.

Those courts that have addressed this specific issue have resolved it in several different ways. *See Insurance—Auto—Alighting or Entering,* 19 ALR2d 513 (1951). Some courts have held or said that "alighting from" continues until the person alighting reaches a place of safety. *Whitmire v. National Mut. Ins. Co., supra; St. Paul—Mercury Indemnity Co. v. Broyles,* 230 Miss. 45, 92 So.2d 252 (1957); *Kantola v. State Farm Ins.,* 62 Ohio Misc. 11, 405 N.E.2d 744 (Mun.Ct.1979). Applying this definition here, the closest place of safety would be the north shoulder of the westbound lane of traffic; a place Bill reached when he stepped down from the bus.

However, this definition is misdirected. A more practical and workable method of determining the limits of "alighting from" is a factorial method used by some courts. This method assumes "alighting from" is a continuous series of acts. At some point in this series, the final act of "alighting from" is completed, with the next act being the beginning of a new activity or direction. *See, e.g., Carta v. Providence Washington Indemnity Co.,* 143 Conn. 372, 122 A.2d 734, 736–737 (1956). The method obviously requires a determination of the point at which the final act of "alighting from" is completed and the new activity and direction begins. Objective operative facts are used to reach this determination. These facts include the time that elapsed from the actual physical descent from the insured vehicle until the injury, the distance from the insured vehicle to the site of the injury and any other operative facts which evidence an intention by the claimant to undertake a new activity or direction. *See, e.g., Day v. Coca–Cola Bottling Co.,* 420 So.2d 518, 519–520 (La.App.1982); *Fidelity & Cas. Co. of N.Y., supra.*

The parties here stipulated that Bill walked 18–20 feet after stepping down from the bus, but stipulated Bill was never more than two feet away from the bus. There was no stipulation about elapsed time, but, for our purposes here, it is appropriate to assume it was only a short period of time from his actual descent until he was hit. These facts, however, must be considered with the fact that Bill was hit after he had crossed the center line of the highway, in the eastbound lane of traffic. Given this latter fact, it is unnecessary to determine the exact point at which Bill completed "alighting from" the bus. Suffice it to say, after Bill crossed the center line, he was engaged in a distinctly separate activity not related to the bus; that is, he was then crossing the highway in order to go home. *See, e.g., Fidelity & Cas. Co. of N.Y., supra,* 368 So.2d at 1315.

**1.** "For instance a person may be 'entering into' a vehicle and be in a position where he is both in and upon the vehicle also." *Id.* at 386.

**2.** "[A]light ... (1) to spring down, get down, or descend, as from a horse's back or from a carriage; to dismount ..." Webster's New International Dictionary of the English Language (2nd Edition 1960).

Bill relies on *Kontola v. State Farm Ins., supra,* and argues that "alighting from" here continues or would have continued until he reached a place of safety. The place of safety for those "alighting from" a school bus, he contends, is greater than the place of safety for those "alighting from" an automobile or even other carriers. Bill points out the Rules of the Department of Elementary and Secondary Education "require students who must cross the roadway after leaving the bus ... to cross a minimum of ten feet (10) in front of the bus...." 5 CSR 40–261(3)(A), (2)(D). Thus, Bill argues, "[t]he school bus was supposed to be his protector and a stoplight for other traffic. Had not this been the case, he would not have trustingly walked in front of the school bus."

Bill's argument is not persuasive. The fact the Department of Education provides traffic regulations to protect students does not mean the protection was designed to protect a student "alighting from" a school bus, as that phrase is understood by an insurer and its insured in a contract of insurance, rather than protecting the student as he crosses the street, on his way home, after "alighting from" the school bus. *See Fidelity & Cas. Co. of N.Y. v. Garcia, supra.*

I would affirm the judgment. I respectfully dissent.