[No. B063012. Second Dist., Div. Six. Aug. 18, 1992.]

PAT MULLINS, Plaintiff, Cross-defendant and Appellant, v. MAYFLOWER INSURANCE COMPANY, Defendant, Cross-complainant and Respondent.

## COUNSEL

Joseph J. Ryan for Plaintiff, Cross-defendant and Appellant.

Morris, Polich & Purdy, Jeffrey S. Barron, Robert S. Wolfe and Douglas J. Collodel for Defendant, Cross-complainant and Respondent.

## OPINION

**STONE (S. J.), P. J.**—Pat Mullins appeals from a judgment entered following summary judgment in favor of respondent Mayflower Insurance Company (Mayflower). (Code Civ. Proc., § 437c, subd. (*l*).) She contends that: (1) she is a *covered person* under the Mayflower insurance policy; (2) the strict statutory definition of an *underinsured motor vehicle* has been strictly met in this case; and (3) Mayflower's right to credit does not take precedence over her right to receive compensation for her unsatisfied damages. We affirm the judgment.

### FACTS

November 20, 1989, appellant filed a declaratory relief action against Mayflower and other individuals to determine whether she could recover underinsured motorist benefits for an accident which occurred March 31, 1989, and which resulted in the death of her son, decedent Scott Mullins. Mayflower had issued an automobile policy to named insureds Robert and Penelope Botens. The Mayflower policy in effect on the date of the accident included underinsured motorist coverage with a per accident limit of $300,000 for "covered persons" under the policy. The policy included a "California Amendment" which provided that, "an underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident but its limit for liability is less than the limit of liability for this coverage."

The evening of March 31, 1989, the Botenses' son Jeffrey was driving the insured car on northbound Highway 101, near Camarillo about 8:30 p.m. When he felt a problem with the car's handling, he pulled the car off the highway, out of the traffic lanes, and discovered that one of the tires was flat. Jeffrey parked and locked the car, and he and five other young men who were his passengers began walking down the shoulder of the highway toward the nearest off-ramp to find a telephone. When they were about 50 feet down the highway from the car, they were struck by a Ford Bronco driven by Diane Mannes, who was intoxicated at the time. Scott Mullins and two other young men were killed.

Farmers Insurance Exchange (Farmers) provided automobile coverage with liability limits of $100,000/$300,000 for the Bronco. Farmers paid its entire $300,000 policy limit to resolve the multiple claims arising from the accident, including appellant's claim.

Mayflower and appellant filed cross-motions for summary judgment to determine whether appellant qualified as a claimant under the uninsured and underinsured motorist coverage in the Mayflower policy. Mayflower denied that appellant was a "covered person" under its policy. Mayflower alleged that the drunk driver was neither "uninsured" or "underinsured" under the Mayflower policy because the drunk driver had liability insurance with another carrier, Farmers, with the same policy limits as the underinsured motorist coverage provided under the Mayflower policy.

The trial court granted summary judgment in favor of Mayflower and denied appellant's motion for summary adjudication of issues.

## DISCUSSION

*Appellant Not a Covered Person Under Mayflower Policy.*

Part 6 of Mayflower's policy concerning uninsured and underinsured motorists extends coverage to "(c) a person *occupying* an *insured auto*"; and "(e) a person, for damages that person is entitled to recover, because of *bodily injury* to which Part 6 applies sustained by a person described in (a), (b), (c) or (d) above." "Occupying" is defined in the glossary of the policy as "in, upon, getting in, on, out or off."

Appellant asserts that according to California precedent, when the use and operation of an insured motor vehicle has placed the person who had been immediately using it in a place of danger, for purposes of underinsured motorist coverage the person is a "covered person" when injured in that

place of danger. She cites for this proposition *Cocking* v. *State Farm Mut. Automobile Ins. Co.* (1970) 6 Cal.App.3d 965 [86 Cal.Rptr. 193] and *National Indemnity Co.* v. *Farmers Home Mutual Ins. Co.* (1979) 95 Cal.App.3d 102 [157 Cal.Rptr. 98].

In *Cocking*, the driver, a permissive user of the insured automobile, walked to the back of the car on a snow-packed road, and removed tire chains from the trunk. When he was preparing to attach the chains, he was struck by an uninsured motorist. The insurer refused the driver's claim on the basis of his lack of status as a covered person. The appellate court reversed the lower court and held that coverage is extended to the person seeking recovery where he was using the vehicle and where he was in "such a position in relation thereto as to be injured in its use." (6 Cal.App.3d at p. 970.)

In *National*, a mother stopped the insured vehicle at the curb, and prepared to step out onto the street. Before the mother could react, her nephew, a child, got out of the vehicle, dashed around to the front of the vehicle, and ran into the street. A passing motorist struck the child when he reached the road's center line. The reviewing court in *National* stated that an automobile can be in "use" even though at rest and that National's policy specifically provided that "use" of an automobile includes loading and unloading. (95 Cal.App.3d 102, 106.) The court further held that the process of unloading a child from a motor vehicle does not end the moment that the child's feet touch the ground or when his or her body is entirely outside the vehicle. (*Ibid.*) The court held that the act of the insured gave rise to liability; i.e., her negligent failure to supervise and control the child during the unloading of the vehicle. (*Id.*, at p. 108; cf. *Farmers Ins. Exchange* v. *Reed* (1988) 200 Cal.App.3d 1230, 1235 [248 Cal.Rptr. 11].)

Appellant also relies on *Joins* v. *Bonner* (1986) 28 OhioSt.3d 398 [504 N.E.2d 61], in which a minor child who had left the insured vehicle and had walked across the street was struck by an uninsured motorist. The Ohio Supreme Court held that such auto-related conduct is a course of conduct reasonably incident to the use of the automobile since the person "is not finished with exiting a vehicle until he or she reaches a place of safety on the side of the street or road to which he or she is proceeding." (504 N.E.2d at p. 63.)

Appellant asserts that the resolution of the issue of the covered status of the victim ought to turn solely upon the dynamic interrelationship between his use of the automobile and his injury-producing activity. Appellant poses the true coverage question as follows: did the victim's use and proximity to

the insured automobile contribute as a substantial factor, concurrently with the tortious behavior of the underinsured motorist, to the occurrence out of which his injury occurred?

Appellant, relying on *Joins* v. *Bonner, supra,* asserts that coverage should be extended until the person leaving the vehicle has reached a place of safety or is not in a zone of danger. (But see *Fidelity & Cas. Co. of New York* v. *Garcia* (Fla.Dist.Ct.App. 1979) 368 So.2d 1313 and *Jarvis* v. *Pennsylvania Threshermen & F. Mut. C.I. Co.* (1956) 244 N.C. 691 [94 S.E.2d 843] where courts refused to find coverage when the claimants had left the vehicles and walked away before injury.) However, as stated in *Cocking* v. *State Farm Mut. Automobile Ins. Co., supra,* 6 Cal.App.3d 965, 970, consideration must be given not only to what the person was doing upon injury, but also to his purpose and intent. In *Cocking,* the plaintiff "was performing an act physically and directly related to the car." (*Id.,* at p. 971.) *Cocking* cited cases with approval in which coverage was extended to persons struck while leaning into the insured vehicle after changing a tire, locking the door on the driver's side, pushing a stalled automobile, and standing two to three feet from the vehicle while writing down a license number after a collision. (*Id.,* at p. 970.)

The instant case is more akin to *Menchaca* v. *Farmers Insurance Exchange* (1976) 59 Cal.App.3d 117 [130 Cal.Rptr. 607] and *State Farm Mut. Auto. Ins. Co.* v. *Spann* (1973) 31 Cal.App.3d 97 [106 Cal.Rptr. 923] which found no coverage when the claimant was returning to the insured's parked vehicle after viewing a movie (*Menchaca*) and where the claimant was not in close proximity to the vehicle when struck (*State Farm*). (See also *Revesz* v. *Excess Ins. Co.* (1973) 30 Cal.App.3d 125 [106 Cal.Rptr. 166] where the appellate court refused to extend uninsured motorist coverage to a plaintiff jewelry salesman who had locked jewelry in his trunk and temporarily left the vehicle when his car was stolen, and *Insurance Company of North America* v. *Perry* (1964) 204 Va. 833 [134 S.E.2d 418] where an officer was killed while on foot 164 feet away from a parked cruiser was held not to be "using" the police cruiser and not an insured under the automotive policy.)

 Here, as in *Menchaca,* Scott Mullins's death did not result from his being in close proximity to the insured vehicle nor from his performance of acts " 'physically and directly related to the car' or its use." (59 Cal.App.3d 129.) He and the other young men had temporarily abandoned the vehicle and their intent was to seek a telephone some distance away. (See *Revesz* v. *Excess Ins. Co., supra,* 30 Cal.App.3d 125, 128.)

 When interpreting the terms of an insurance policy, the courts will not indulge in any forced construction in order to fasten liability upon an

insurer which it has not assumed. (*Lasam* v. *Interinsurance Exchange* (1991) 229 Cal.App.3d 508, 511 [280 Cal.Rptr. 214].) ▮ Appellant's test of allowing recovery to anyone who was injured before the person arrived safely at his or her destination strains both any reasonable interpretation of the definition of "occupying" in the policy and existing legal precedent in uninsured and underinsured motorist cases. We cannot rewrite the insurance policy to bind the insurer to a risk that it did not contemplate and for which no premiums were paid.

Appellant was not a "covered person" under Mayflower's policy. The trial court's grant of summary judgment in favor of Mayflower was correct. Discussion of other issues raised is therefore unnecessary.

The judgment is affirmed.

Gilbert, J., and Yegan, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 28, 1992.