[Cite as *Martens v. Auto-Owners Ins. Co.*, 2019-Ohio-5423.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


Donald Martens, III                                  Court of Appeals No. L-19-1011

       Appellant                                 Trial Court No. CI0201701688

v.

Auto-Owners Insurance Company            **DECISION AND JUDGMENT**

       Appellee                                   Decided:  December 31, 2019

* * * * *

Drew R. Masse, for appellant.

Shannon J. George, for appellee.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Donald Martens, III, appeals the January 22, 2019 judgment of the Lucas County Court of Common Pleas granting summary judgment to appellee, Auto-Owners Insurance Company.  Because we find appellant was occupying the vehicle pursuant to the terms of the insurance contract, we reverse.

{¶ 2} Appellant brings forth one assignment of error for our review:

The trial court erred when it granted summary judgement in favor of Appellee Auto-Owners Insurance Company.

**Facts**

{¶ 3} On or about September 19, 2016, appellant and his boss arrived at 9955 Brint Road, Sylvania, Lucas County, Ohio. They were at the address to perform driveway sealing services for a residential address. The truck and the attached trailer were parked on the eastbound side of the road with about half of the truck in the grass and half on the roadway. Traffic cones were placed around the vehicle to direct traffic away from the truck. Appellant and his colleagues removed weed trimmers and other work equipment out of the truck and trailer and placed the equipment on the grass area next to the driveway. The unloading was completed prior to appellant's injury.

{¶ 4} Appellant then returned to the street side of the truck to ask his boss which end of the driveway they would begin their work. Both men were inside the traffic cones, but outside of the vehicle, while they discussed what the work for the day would entail. Appellant entered the area specifically to ask his boss on which end of the driveway they should begin work. The two men spoke in what would be the middle of the right lane of Brint Road. Appellant was mere feet from the truck at this time.

{¶ 5} Appellant's boss noticed a car bearing down on them. Appellant looked up to see a shocked look on his boss's face. Appellant froze because he was unsure which action he should take. A negligent, underinsured driver then struck the truck and

2.

appellant.  Appellant broke his left leg in three places and required surgery and physical rehabilitation.

{¶ 6} At all times, the truck was covered under an insurance policy issued by appellee to appellant's employer.  Appellant filed the initial action against appellee seeking benefits under the underinsured motorist benefits of that policy.

{¶ 7} During the course of the litigation, appellee filed a motion for summary judgment which sought to have the trial court determine appellant was not covered under the insurance policy because he was not "occupying" a vehicle at the time of the accident.  Appellee argued it was entitled to judgment because appellant was not in, on, entering, exiting, or alighting from the vehicle at the time of the accident.  Appellant filed a cross-motion for summary judgment in response seeking a legal determination that he was occupying the vehicle at the time of the accident.

{¶ 8} The trial court agreed with appellee and granted its motion for summary judgment.  The trial court found that appellant was not immediately entering or exiting the vehicle and was not alighting from the vehicle at the time he was injured.  The trial court found that appellant did not have a sufficient relationship with the vehicle in order to be considered occupying the vehicle.  The trial court came to this conclusion, in part, because appellant was not conducting a work related activity at the time of the accident and his presence in the roadway was not vital to performing his work related duties.  The trial court also denied appellant's cross-motion for summary judgment.

3.

**Law**

{¶ 9} An appellate court reviews a trial court's summary judgment decision de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment will be granted when no genuine issues of material fact exist when after, construing all the evidence in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). *Accord Lopez v. Home Depot, USA, Inc.*, 6th Dist. Lucas No. L-02-1248, 2003-Ohio-2132, ¶ 7. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984).

{¶ 10} "The interpretation of a written contract, such as an insurance policy, is a matter of law that we review de novo." *Willis v. Gall*, 2015-Ohio-1696, 31 N.E.3d 678, ¶ 10 (4th Dist.), citing *Shafer v. Newman Ins. Agency*, 4th Dist. Highland No. 12CA11, 2013-Ohio-885, ¶ 10. If the language of a contract is ambiguous or susceptible to more than one interpretation, it must be construed in favor of the insured and against the insurer. *Id.* at ¶ 13, citing *Dominish v. Nationwide Ins. Co.*, 129 Ohio St.3d 466, 2011-Ohio-4102, 953 N.E.2d 820, ¶ 7.

{¶ 11} "When an insurance contract is clear and unambiguous, its interpretation is a question of law." *Hoff v. Agricultural Ins. Co.*, 6th Dist. Lucas No. L-03-1242, 2004-Ohio-3983, ¶ 15, citing *Leber v. Smith*, 70 Ohio St.3d 548, 553, 639 N.E.2d 1159 (1994).

4.

As with any other contract, the court must look to the terms of the policy to determine the intention of the parties concerning coverage. *Id.*, citing *Minor v. Allstate Ins. Co., Inc.*, 111 Ohio App.3d 16, 20, 675 N.E.2d 550 (2d Dist.1996). "The court must give the words and phrases in the policy their plain and ordinary meaning." *Id.*, citing *State Farm Auto. Ins. Co. v. Rose*, 61 Ohio St.3d 528, 575 N.E.2d 459 (1991). When the plain and ordinary meaning of the language contained in an insurance policy is clear and unambiguous, a court cannot resort to construction of that language. *Id.*, citing *Tomlinson v. Skolnik*, 44 Ohio St.3d 11, 12, 540 N.E.2d 176 (1989).

{¶ 12} The Ninth District in *Darno v. Westfield Ins. Co.*, 2015-Ohio-2619, 34 N.E.3d 967, ¶ 12 (9th Dist.) explained:

> The meaning of the term "occupying" has been the subject of much litigation in the area of uninsured motorist and medical payment coverage. In examining the wide array of factual situations that have been litigated on this topic, "it is apparent that determining whether a person is 'occupying' a vehicle is not as easy as it might appear at first blush." *Robson v. Lightning Rod Mut. Ins. Co.*, 59 Ohio App.2d 261, 263, 393 N.E.2d 1053 (10th Dist.1978). The Supreme Court of Ohio has stated that "the word 'occupying' should not be given an unduly narrow definition." *Kish v. Cent. Nat. Ins. Group*, 67 Ohio St.2d 41, 51, 424 N.E.2d 288 (1981). Ohio courts favor a liberal interpretation because "although the term 'occupying' as defined in the insurance contract may not seem ambiguous on its face, it

often becomes ambiguous when determining whether insurance coverage should be extended in certain factual circumstances." *Etter v. Travelers Ins. Cos.*, 102 Ohio App.3d 325, 328, 657 N.E.2d 298 (2d Dist.1995), citing *Robson* at 263.

{¶ 13} "In construing uninsured motorist provisions of automobile insurance policies which provide coverage to persons 'occupying' insured vehicles, the determination of whether a vehicle was occupied by the claimant at the time of an accident should take into account the immediate relationship the claimant had to the vehicle, within a reasonable geographic area." *Joins v. Bonner*, 28 Ohio St.3d 398, 401, 504 N.E.2d 61 (1986), citing *Robson* at 263. The Supreme Court of Ohio found that a passenger who exited a vehicle and who was in the process of crossing the street, was considered to be occupying the vehicle he left because of where the claimant was located at the time of the accident, why he was in the vehicle, and why he exited the vehicle. *Id.* at 398.

{¶ 14} Appellate courts have found that if the claimant is performing a task related to the operation of an insured vehicle the claimant has a sufficient basis to be found they were occupying the vehicle in order to be provided coverage under an insurance policy. *Halterman v. Motorists Mutual Ins. Co.*, 3 Ohio App.3d 1, 443 N.E.2d 189 (8th Dist.1981); *see also Auto-Owners Ins. Co. v. Phillips*, 6th Dist. Lucas No. L-88-271, 1989 WL 65097 (June 16, 1989). Further, a claimant has a sufficient relationship to the insured vehicle if his or her conduct is "foreseeably identifiable with the normal use of

6.

the vehicle." *State Farm Mut. Auto. Ins. Co. v. Cincinnati Ins. Co.*, 8th Dist. Cuyahoga No. 62930, 1993 WL 215450 (June 17, 1993). A claimant's activities must be "vehicle-oriented" rather than "highway oriented." *Id.*

### Analysis

{¶ 15} The insurance policy defines occupying as "Occupying means being in or on an automobile as a passenger or operator, or being engaged in the immediate acts of entering, boarding or alighting from an automobile."

{¶ 16} The insurance contract in this matter is ambiguous because the definition of "occupying" is susceptible to multiple interpretations based on applying that definition to the facts at hand. Several courts, including the Ohio State Supreme Court, have found that the term "occupying" is ambiguous when used in a car-insurance context. *Joins* at 401. We see no reason to find otherwise.

{¶ 17} Further, attempting to apply the term "occupying" to the facts at hand, makes the term ambiguous and susceptible to multiple interpretations. Two such interpretations are presented by both parties. The Fourth District found the definition of "occupying" as defined by appellee to be ambiguous in *Willis*. *Willis* at ¶ 21-24 ("We conclude that the definition of 'occupying' is not plainly unambiguous, but rather is susceptible to more than one interpretation").

{¶ 18} As we find the term "occupying" as used in this context is ambiguous, we now turn to whether appellant was in close geographic proximity to the vehicle and if he had a sufficient relationship with the vehicle in order to be granted coverage. Appellant

7.

was clearly in close geographic proximity to the company's truck. He was hit by the other motorist while he was next to the vehicle.

{¶ 19} The question then becomes what his relationship to the vehicle was and whether that relationship was sufficient to determine that he was occupying the vehicle. We find that such a sufficient relationship did exist.

{¶ 20} First, he was performing a task related to the vehicle. The vehicle was used as a truck for the company's work as contractors and landscapers. His boss was still in the truck at the time appellant was struck by the errant vehicle. Getting directions on how to start their work for the day plainly deals with the purpose of the truck at the time of the accident.

{¶ 21} Further, appellant's actions were foreseeably identifiable with the normal use of the vehicle. Speaking with one's coworker inside of a vehicle that is parked for the express purpose of beginning to work, is a foreseeably identifiable use of the truck and those who occupy it.

{¶ 22} Appellant was near the vehicle, at the time he was struck, in order to speak with his boss about the day's activities. Appellant had already unloaded the back of the truck and prepared some of the materials for the day near the driveway where they would shortly begin work. Appellant was speaking to his boss to ask which end of the driveway they would start on. All of this information leads us to find that appellant had a sufficient relationship with the vehicle.

8.

{¶ 23} We find no evidence presented that appellant was leaving the truck area or attempting to perform a task that was not work related at the time of the accident. The discussion that was taking place between appellant and his boss could have taken place outside of the roadway rather than within the coned-off area of the road, but there is no requirement that a claimant will only be covered by an underinsured driver policy if they were performing a task that had to be completed in the road.

{¶ 24} What is required by case law, is that the claimant is in close geographic proximity with the vehicle, the claimant has a sufficient relationship with the vehicle, and the claimant was acting with a purpose related to the vehicle.

{¶ 25} Appellant had more of a relationship to the vehicle than the claimant in *Joins*. Appellant was near the vehicle speaking to a person related to the purpose of the vehicle. Appellant had not left the area of the truck as the claimant in *Joins*. In *Joins*, the claimant left the vehicle with no intention of returning the vehicle. Here, appellant retained a relationship with the vehicle and the purpose behind the vehicle.

{¶ 26} This is also not the case as in *Darno* where a claimant was found to not have a relationship with the covered vehicle because the claimant was running away from the oncoming vehicle that would later injure him. Appellant remained with the vehicle he arrived at the scene with.

{¶ 27} The case before us today is similar to *State Farm*, where a claimant was injured on a roadway by an underinsured driver. The claimant was in a covered vehicle for the purpose of buying and transporting twenty cases of pop. During the delivery of

9.

the pop, two cases of pop fell off of the truck and the claimant exited the vehicle to recover the bottles. The claimant was injured while he was on the roadway picking up the bottles.

{¶ 28} Appellant similarly was pursuing the purpose behind why he was in the covered vehicle and was in the process of completing his duties with his employer. He was located next to the vehicle to seek guidance on the job they were about to embark on. Appellant was engaged in a task which was reasonably related to the operation of the vehicle.

{¶ 29} As we find that appellant was both in geographic proximity to the vehicle and had a sufficient relationship with the vehicle, we find appellant was occupying the truck at the time of the accident. On consideration thereof, the judgment of the Lucas County Court of Common Pleas is reversed. The matter is remanded to proceed in a manner consistent with this decision. Pursuant to App.R. 24, appellee is ordered to pay the costs of this appeal.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

_____
JUDGE

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.