[No. H025852. Sixth Dist. Nov. 5, 2004.]

ATLANTIC MUTUAL INS. CO., Plaintiff and Appellant, v.
ROBERTO RUIZ, Defendant and Appellant;
AMERICAN STATES INS. CO., Defendant and Respondent.

COUNSEL

Selvin Wraith Halman, Gary R. Selvin and Mark E. Inbody for Plaintiff and Appellant.

Law Offices of Daniel T. Staggs, Natalie K. Mutz; Gwilliam, Ivary, Chiosso and Cava and Steven R. Cavalli for Defendant and Appellant.

Law Offices of Donald J. Deshaw and R. Lawrence Bragg for Defendant and Respondent.

## OPINION

**ELIA, J.**—This declaratory relief action arises from a multiple vehicle accident occurring on Highway 101 that was followed by a secondary collision and concerns the uninsured motorist (UM) provisions of two different policies. The trial court declared in its judgment that Robert Ruiz, the injured party, was an insured under the policy issued by Atlantic Mutual Insurance Company (Atlantic Mutual) and he was not an insured under a policy issued by American States Insurance Company (American States). Atlantic Mutual and Ruiz both appeal.

In its appeal, Atlantic Mutual asserts that Ruiz is not an insured under its policy but he is an insured under American States' policy. In his appeal, Ruiz maintains that he is an insured under both policies and each insurer has an obligation to pay its prorated share.

We affirm.

### A. *Stipulated Facts*

The parties submitted the case for court trial on the following stipulated facts. On October 7, 1997, Cristobol Tavares, who was driving a Toyota Camry, struck the pickup truck driven by Ruiz and then struck a van owned by Group Manufacturing Services, Inc. of California (Group Manufacturing). Ruiz, who was uninjured at this point, exited his employer's truck and "walked approximately 200 feet to where the Group Manufacturing van had stopped, to inquire about the driver's condition, to learn what had happened, and to exchange driver's license/insurance information." It was Ruiz's intention to return to the truck after obtaining documentation from the van's occupants and "wait for the police to arrive as he had been trained to do by his employer."

"Ruiz determined that the right front passenger of the Group Manufacturing van had been injured. He walked around to the passenger side door, opened the door and assisted the passenger out of the van." "As he was approximately one foot from the passenger door, attempting to talk with the driver, he was struck by an underinsured motorist, Alma Ogana," who was driving a minivan. Ruiz never entered Group Manufacturing's van.

As a result of being struck by Ogana, Ruiz suffered "a compression burst fracture at L1, torn ligaments and meniscus in his left knee, a fracture of his left tibia, a fracture of his right tibial plateau, and abdominal trauma as well as post-traumatic stress disorder."

At the time of the initial collision, "Ruiz was driving a vehicle owned by his employer, Fast UnderCar, and he was acting in the course and scope of his employment with Fast UnderCar." Ruiz sought and recovered workers compensation benefits.

American States had issued a commercial auto policy to Fast Pro, Inc., and Fast UnderCar, Inc., as the named insured. Atlantic Mutual had insured Group Manufacturing under a business auto policy. Both policies provided $1 million in underinsured motorists (UIM) benefits[1] and were in effect at the time of the accidents.

The "California Uninsured Motorist Coverage—Bodily Injury" endorsement, which is contained in both policies at issue, provides coverage as follows: "We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.' The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the 'uninsured motor vehicle.' "

The term "insured" is defined, as relevant, to include "[y]ou" or "[a]nyone else 'occupying' a covered 'auto' . . . ." "Occupying" is further defined to mean "in, upon, getting in, on, out or off."

"On July 21, 1998, Mr. Ruiz and his wife filed a personal injury lawsuit against the other drivers" and "recovered a total of $65,000 in policy limits from the other drivers . . . ." "Ruiz made a claim for UIM benefits against

---

[1] Under the Insurance Code provision requiring insurers to provide uninsured motorist coverage, an "uninsured motor vehicle" includes an "underinsured motor vehicle" as statutorily defined. (Ins. Code, § 11580.2, subds. (b) and (p).) Both American States' policy and Atlantic Mutual's policy defined "uninsured motor vehicle" to include "an underinsured motor vehicle" as further defined. All further unspecified statutory references are to the Insurance Code.

Atlantic Mutual and American States, demanding a total of $1 million in damages." Both insurers denied the claim.

## B. *Statement of Decision*

The trial court determined that Ruiz was not "occupying" his employer's pickup truck and, therefore, was not covered under the UM provisions of American States' policy. The court noted that the injury occurred "approximately 200 feet from this vehicle" and Ruiz was "not engaged in 'performance of acts "physically and directly related to the car" or its use' . . . ."

As to the Group Manufacturing vehicle, the court indicated that it was important to consider "the fact that Defendant Ruiz, who despite being approximately one foot from this vehicle at the time of his injury, was never an occupant of this vehicle, had no intention of occupying it, had only minimal contact with the vehicle (opening the passenger door), and was totally unknown to either Group Manufacturing, Inc., its insurance carrier, Atlantic Mutual, or the driver and its passenger." Nevertheless, the court concluded that Ruiz was an insured under the UM provisions of Atlantic Mutual's policy. Its conclusion was predicated upon "location of the Group Manufacturing, Inc., vehicle (and how it came to be so located)," the fact that Ruiz was placed in harm's way because he was "assisting someone from 'getting out' of the insured vehicle," "the public policy of affording coverage to the injured," and the rule requiring ambiguities to be resolved in favor of coverage.

## C *Meaning of "Occupying" and "Upon" in Defining "Insured"*

### 1. *Atlantic Mutual's UM Endorsement*

To be entitled to coverage under Atlantic Mutual's endorsement for uninsured motorist coverage, Ruiz had to qualify as an "insured" within the meaning of the UM coverage provisions. As mentioned, the term "insured" included "[a]nyone else 'occupying' a covered 'auto' " and "occupying" was further defined to "mean[] in, upon, getting in, on, out, or off." The question in this case is whether Ruiz was "upon" Group Manufacturing's van when he was struck by the underinsured motorist.

Atlantic Mutual argues that the trial court improperly disregarded the plain meaning of the policy in finding UM coverage for Ruiz because "Ruiz is a stranger to the Atlantic Mutual policy" and he never occupied or intended to enter or occupy the vehicle it insured. It maintains that Ruiz was not an "insured" because "physical proximity" to Group Manufacturing's van was not enough and because he was not a "permissive user" of the van. Atlantic

Mutual refers us to two Virginia cases, which adopted a narrow construction of the term "upon" and required some immediate connection related to "occupying" the insured vehicle. (See *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Bristow* (1966) 207 Va. 381 [150 S.E.2d 125, 126–128] [Samaritan injured while looking under the hood at the motor of a stalled vehicle not "upon" the insured vehicle because "[h]is touching of the vehicle was merely incidental to his kindly act as a Good Samaritan"]; *Edwards v. Government Employees Ins. Co.* (1998) 256 Va. 128 [500 S.E.2d 819, 819–822] [acquaintance injured while attempting to replace a tire on insured vehicle was not "upon" the insured vehicle because his act was not "immediately related to occupancy of the vehicle" even though he "ultimately intended to occupy the vehicle"].)

The general rules of policy construction guide our determination whether Ruiz was an insured by virtue of "occupying" Group Manufacturing's van. "If the policy language 'is clear and explicit, it governs.' (*Bank of the West*, 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].)" (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568].) "When interpreting a policy provision, we must give its terms their ' "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." ' (*AIU Ins.*, 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253], quoting Civ. Code, § 1644.)" (*Palmer v. Truck Ins. Exchange, supra*, 21 Cal.4th at p. 1115.)

"A policy provision is ambiguous *only* if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole. (See *Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 868 [77 Cal.Rptr.2d 107, 959 P.2d 265] (*Foster-Gardner*).) The court may then 'invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage.' (*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37 [36 Cal.Rptr.2d 100, 884 P.2d 1048].)" (*Palmer v. Truck Ins. Exchange, supra*, 21 Cal.4th at p. 1115.)

"The mere fact that a word or phrase in a policy may have multiple meanings does not create an ambiguity. [Citation.]" (*Palmer v. Truck Ins. Exchange, supra*, 21 Cal.4th at p. 1118.) "[A] word with a broad meaning or multiple meanings may be used for that very reason—its breadth—to achieve a broad purpose." (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 868 [21 Cal.Rptr.2d 691, 855 P.2d 1263].) " ' "[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." ' [Citation.] Where . . . the meaning

of the policy term is clear from the context of the policy as a whole, no ambiguity exists. [Citation.]" *(Palmer v. Truck Ins. Exchange, supra,* 21 Cal.4th at p. 1118.) "The proper question is whether the word is ambiguous in the context of *this* policy and the circumstances of *this* case. [Citation.] The provision will shift between clarity and ambiguity with changes in the event at hand. [Citation.]" *(Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 868 [21 Cal.Rptr.2d 691, 855 P.2d 1263].)

Since Ruiz was not "in" or "getting in, out or off" Group Manufacturing's van, we focus on the meaning of "upon." In everyday speech, we do not usually say a person is "upon" a vehicle. Consequently, we cannot simply look to its ordinary and popular sense and must turn to the dictionary.

"Upon" in modern usage is the equivalent of "on." (Merriam-Webster's Collegiate Dict. (10th ed. 2001) p. 1294 (Webster's); American Heritage College Dict. (3d ed. 1998) p. 1482 (American Heritage); Compact Edition of the Oxford English Dict. (1971) vol. II, p. 3564 (Oxford Dictionary).) "Upon" is defined by Oxford Dictionary in regard to physical position (as opposed to usages involving immaterial or figurative relationships not relevant here) to mean: "Of local position outside of, but in contact with or close to, a surface." (Oxford Dict., *supra,* vol. II, p. 3564.) "On" is similarly defined by Oxford Dictionary: "Of local position outside of, but close to or near, any surface." (Oxford Dict., *supra,* vol. I, p. 1987.) This general definition includes "[i]n proximity to; close to, beside, near, by, at; on the bank of (a river or lake), on the coast of (the sea)." *(Id.,* p. 1988.)

Webster's similarly defines "on" to express physical location as follows: "1a—used as a function word to indicate position in contact with and supported by the top surface of . . . b—used as a function word to indicate position in or in contact with an outer surface . . . c—used as a function word to indicate position in close proximity with <a village the sea> <stay *on* your opponent> . . . ." (Webster's, *supra,* p. 809.) American Heritage defines "on" in terms of physical position as follows: "1a. Used to indicate position above and supported by or in contact with: *The vase is on the table.* b. Used to indicate contact with or extent over (a surface) regardless of position: *a picture on the wall.* c. Used to indicate location at or along: a town on the border. d. Used to indicate proximity: *a town on the border.* e. Used to indicate attachment to or suspension from: *beads on a string.*" (American Heritage, *supra,* p. 953.)

Atlantic Mutual's UM policy as a whole does not clarify whether under the present circumstances "upon" is intended to convey the narrower sense of contact with a surface or a broader meaning of close physical proximity. In

addition the policy does not explicitly answer whether, if the broader meaning is intended, some kind of greater connection to the insured vehicle is required beyond mere physical proximity.

A few California cases have considered the meaning of "upon" as used in automobile insurance policies. In *Christoffer v. Hartford Acc. & Indem. Co.* (1954) 123 Cal.App.2d Supp. 979 [267 P.2d 887] (*Christoffer*), the question was whether a man who was using the vehicle with permission was "upon" the vehicle within the meaning of the medical payments provision when he was struck by another car while he was touching the left rear wheel, either taking it off or putting it on.[2] (*Id.* at pp. Supp. 979–980.)

The reviewing court in *Christoffer* believed that the term "upon" was unambiguous and "should be given the meaning ordinarily accepted in everyday speech." (*Christoffer, supra,* 123 Cal.App.2d at p. Supp. 981.) The court reasoned: "Since there are no exceptions, exclusions, restrictions, or qualifications contained within the policy as to how or in what manner the assured was to be upon the automobile (such as standing upon, sitting upon, kneeling upon, pushing upon, pulling upon, riding upon, resting upon, etc.), we conclude that respondent was 'upon the automobile' as the term is employed in the policy, just as a fly is said to be 'upon the wall' or 'upon the ceiling,' or a painter is said to be 'upon the wall,' a person to be 'upon a raft' although only supported by the hand, or as a baseball player (the runner) is said to be upon the base if any portion of his body is in contact with the bag. Everyday speech refutes the statement that the word 'upon' is confined to the meaning of 'on top of.' The dog is 'upon the leash'; the man is 'upon the rope.' It is this meaning of the word 'upon' which we believe the parties had in mind in the preparation of Coverage 'C' of the contract. It is the meaning set forth by Webster's wherein the position of contact is against the supporting surface rather than above it, or position of contiguity wherein contact and support is from elsewhere than beneath." (*Id.* at pp. Supp. 982–983.) The *Christoffer* court affirmed the judgment for the injured party based upon the dictionary meaning of "upon." (*Id.* at pp. Supp. 982–984.)

In *Cocking v. State Farm Mut. Automobile Ins. Co.* (1970) 6 Cal.App.3d 965 [86 Cal.Rptr. 193] (*Cocking*), an uninsured motorist struck an individual, who had been driving an insured Volkswagen with the owner's permission, had exited the vehicle, and was standing one to four feet behind the vehicle in

[2] Under the medical payments provision at issue in *Christoffer, supra,* 123 Cal.App.2d Supp. 979, the insurer had agreed: " 'To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury, sickness, or disease, caused by accident, while in or *upon,* entering or alighting from the automobile *if the automobile is being used by the Named Insured or with his permission.*' " (*Id.* at pp. Supp. 979–980, italics added.)

preparation to putting on tire chains. (*Id.* at p. 967.) The applicable automobile policy provided UM coverage and, similar to Atlantic Mutual's UM endorsement, defined "insured" as " '. . . any other person while occupying an insured automobile' and in turn defined the term 'occupying' " as " '. . . in or upon or entering into or alighting from.' " (*Ibid.*) The trial court concluded that the injured driver had not been occupying the insured vehicle at the time of the accident since "at the time he was struck, had been outside the car for approximately two minutes and was standing some one to four feet from it." (*Ibid.*)

The *Cocking* appellate court first considered *Christoffer, supra,* 123 Cal.App.2d Supp. 979. (*Cocking, supra,* 6 Cal.App.3d at p. 968.) The appellate court agreed with *Christoffer*'s conclusion but not with "its rationale suggesting that in every instance there must be a physical contact between the injured person and the car he is using." (*Cocking, supra,* 6 Cal.App.3d at p. 969.) The appellate court observed that "the dictionary definition of the word 'upon' includes 'in or into close proximity.' (Webster's Third New Internat. Dict.)" (*Ibid.*) It pointed out that an Illinois court had concluded that "upon," as used in a medical payments provision, had "connoted some physical relationship enlarging the area defined by the words 'entering or alighting' and the word 'in.' [Citation.]" (*Id.* at p. 970.)

However, the *Cocking* court believed dictionary definitions alone were not determinative because the policy language had to be "read and interpreted in the light of the purpose of the uninsured motorist statute, the provisions of which are a part of the instant insurance policy. [Citations.]" (*Cocking, supra,* 6 Cal.App.3d at p. 969.) The court stated that there was "ample and significant authority holding that the purpose of uninsured motorist statutes is to give monetary protection to persons who, while lawfully using highways themselves, suffer grave injury through the negligent use of those highways by others. [Citations.]" (*Ibid.*)

The appellate court declared that "[s]uch [policy] language has been interpreted to mean that coverage is extended to the person seeking recovery under the policy where he was using the vehicle, either as the named insured or with the latter's permission or consent, express or implied, and where he was in such a position in relation thereto as to be injured in its use. [Citations.]" (*Cocking, supra,* 6 Cal.App.3d at pp. 969–970.) The *Cocking* court stated: "In determining whether the person was in such a position in relation to the vehicle as to be injured in its use, consideration must be given, not only to what the person was doing upon injury, but also to his purpose and intent. [Citations.]" (*Id.* at p. 970.)

The appellate court found coverage applying this standard: "[I]t is undisputed that plaintiff was using the insured's Volkswagen permissively. Under

the agreed facts it is also evident that plaintiff was performing an act physically and directly related to the car. Since plaintiff was traveling under highway conditions requiring tire chains, his acts of stopping the vehicle to put chains on, and of undoing the bag containing the chains while in close proximity to the car, clearly suggest his intent to place those chains on the car's tires. Accordingly, we hold that plaintiff's position preparatory to placing the chains on the tires of the car put him in the requisite physical relationship to the car. His injury while in that position, therefore, occurred while he was 'using' the car and while he was 'upon' the Volkswagen within the meaning of the policy and [Insurance Code] section 11580.2." (*Cocking, supra,* 6 Cal.App.3d at pp. 970–971.)

In placing its judicial construction upon the term "upon," the *Cocking* court relied on a number of out-of-state cases considering medical payment provisions that required the injury to arise out of the *use* of the car, or related the term "occupying" or "upon" to *use* of the car by the named insured or a permissive user. However, the express policy definitions of "insured" or "occupying" under consideration in *Cocking*, which are similar to those at issue here, did not specifically require an individual to be "using" the insured vehicle or be a "permissive user" of the insured vehicle.

■ We agree with *Cocking* insofar as it interpreted the word "upon" in the light of the public policy underlying the uninsured motorist statute "to provide compensation for those injured by the use of automobiles and through no fault of their own . . . ." (*Cocking, supra,* 6 Cal.App.3d at p. 969.) We agree that "upon" must be construed to mean something more than the other words used to define "occupying" since otherwise the word "upon" is rendered superfluous and every part of the policy is not given effect. (See *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 827–828 [274 Cal.Rptr. 820, 799 P.2d 1253].) We also agree with its conclusion that "upon" means more than direct physical contact with the insured vehicle given the remedial purpose of the uninsured motorist coverage law. In fact, Atlantic Mutual does not argue that physical contact with the insured vehicle was required to qualify as an "insured." However, we disagree with *Cocking* to the extent the opinion might be read as adding, beyond the express policy terms, a prerequisite that an individual be a "permissive user" to qualify as an "insured" because "[t]he rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it. [Citations.]" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619] (*Waller*).)

■ The issue of permissive use arises under Atlantic Mutual's UM endorsement in the context of an exclusion. The endorsement states: "This

insurance does not apply to any of the following: . . . [¶] 6. Anyone using a vehicle without a reasonable belief that the person is entitled to do so." Exclusion clauses "remove coverage for risks that would otherwise fall within the insuring clause. [Citation.]" (*Waller, supra,* 11 Cal.4th. at p. 16.) "Before 'even considering exclusions, a court must examine the coverage provisions to determine whether a claim falls within [the policy terms].' [Citation.]" (*Ibid.*) "[E]xclusionary clauses are interpreted narrowly, whereas clauses identifying coverage are interpreted broadly. [Citation.]" (*Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406 [257 Cal.Rptr. 292, 770 P.2d 704].)

Atlantic Mutual admits that "[t]he [policy] definition of insured does not specifically limit coverage to those 'using' the vehicle" but nevertheless Atlantic Mutual argues that Ruiz must be a "permissive user" to qualify as an "insured." Atlantic Mutual insists that "section 11580.2, which is incorporated into UIM policies as a matter of law, incorporates 'use' of the vehicle" by providing "coverage for liability 'arising out of the ownership, maintenance, or use of a motor vehicle.' "

■ Section 11580.2, subdivision (a), generally requires every policy of automobile liability insurance to include uninsured motorist coverage of specified amounts. It provides in part: "No policy of bodily injury liability insurance covering liability *arising out of the ownership, maintenance, or use of any motor vehicle* . . . shall be issued or delivered in this state to the owner or operator of a motor vehicle . . . unless the policy contains, or has added to it by endorsement, a provision with coverage limits at least equal to the limits specified in subdivision (m) and in no case less than the financial responsibility requirements specified in Section 16056 of the Vehicle Code insuring the insured . . . for all sums within the limits that he . . . shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle." (§ 11580.2, subd. (a)(1), italics added.)

■ The term "insured," insofar as pertinent to UM coverage here, is defined by the Insurance Code as "any other person while in or upon or entering into or alighting from an insured motor vehicle . . . ." (§ 11580.2, subd. (b).) The statutory definition of "insured" for purposes of UM coverage does not include any requirement that the person be using or have permission to use the insured vehicle.

Atlantic Mutual also refers us to a number of inapposite cases for its claim that an individual "must have permission to be in, on or near the vehicle before claiming entitlement to UIM benefits from that other vehicle's insurer." The cited cases concern altogether different coverage questions arising

from various policy provisions not at issue here. They do not concern the meaning of "occupying" or "upon" for purposes of defining "insured."

The import of "upon" was also considered in another California case, *Utah Home Fire Ins. Co. v. Fireman's Fund Ins. Co.* (1970) 14 Cal.App.3d 50 [91 Cal.Rptr. 781] (*Utah Home*), which involved a question of UM coverage under two separate policies. The issue was whether an exemption in the injured individual's own automobile policy eliminated UM coverage under that policy because there was similar UM coverage under the policy issued to the owner of the other vehicle involved in the accident. (*Id.* at p. 53.) The pertinent policy provision stated: " '(c) The insurance coverage provided for in this section does not apply: (1) . . . (2) To bodily injury of the insured while in or upon or while entering into or alighting from an automobile other than the described automobile if the owner thereof has insurance similar to that provided in this section.' " (*Id.* at p. 52.) This policy language tracked section 11580.2, subdivision (c)(2).[3]

■ The primary purpose of the exemption provided by section 11580.2, subdivision (c)(2), is to prevent double recovery by the injured insured where otherwise there might be UM coverage under more than one policy. (See *Calfarm Ins. Co. v. Wolf* (2001) 86 Cal.App.4th 811, 817 [103 Cal.Rptr.2d 584].) Both 11580.2, subdivision (c), and 11580.2, subdivision (b), which defines "insured" for purposes of UM coverage, use the same language to describe an insured's position in relation to the insured vehicle: "in or upon or entering into or alighting from." Not only is it the general "rule that a word or phrase will be given the same meaning each time it appears in a statute" (*Steketee v. Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46, 53 [210 Cal.Rptr. 781, 694 P.2d 1153]), but the exemption's purpose implies that the phrases have the same meaning. Like subdivision (b), subdivision (c)(2) of section 11580.2 does not use the word "occupying" to describe the insured's physical relationship to an insured vehicle.[4]

In *Utah Home, supra,* 14 Cal.App.3d 50, the injured individual was struck by an uninsured motorist as he was standing in the street with his hands on the windowsill of a parked Cadillac and conversing with his friend who was in the Cadillac's driver's seat. (*Id.* at pp. 51–52.) Moments before, the injured

---

[3] Section 11580.2, subdivision (c), provides in part: "The insurance coverage provided for in this section does not apply either as primary or as excess coverage: . . . [¶] (2) To bodily injury of the insured while in or upon or while entering into or alighting from a motor vehicle other than the described motor vehicle if the owner thereof has insurance similar to that provided in this section."

[4] The appellate court in *Utah Home* completely discounted the Virginia case of *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Bristow, supra,* 150 S.E.2d 125, which Atlantic Mutual urges us to follow, because the exemption's language did not involve the term or concept of "occupying." (*Utah Home, supra,* 14 Cal.App.3d at pp. 53–54.)

man had parked his vehicle at the curb two vehicles behind his friend's Cadillac, gotten out, and walked over to the Cadillac. (*Ibid.*) The injured individual was flattened against the Cadillac by an unidentified car that did not stop. (*Id.* at p. 52.) The injured party's insurer successfully sought a declaratory judgment that the UM coverage under its policy did not apply to the injuries sustained as a result of the accident and that such loss was covered by the policy issued to the driver of the Cadillac. (*Id.* at p. 51.)

The appellate court in *Utah Home* ostensibly accepted *Cocking*'s conclusions that "upon" included "in or into close proximity" and that the injured individual must have been permissively using the insured vehicle. (*Utah Home, supra,* 14 Cal.App.3d at p. 54.) The court in *Utah Home* stated: "There remains the more difficult question whether [the injured man's] conversation with [his friend] in the precise position above described constituted a use of [his friend's] car with the latter's permission." (*Ibid.*) However, the court very loosely applied the considerations of "use" and "permission" advanced by *Cocking* and articulated an "essential factor" test. It reasoned: "[The injured man] would not have been in the path of the 'phantom' car if [his friend] had not been seated in his parked Cadillac. Since the Cadillac was the essential factor that placed the parties in their respective positions at the time of the accident, [the injured man] was 'using' and 'upon' the car within the meaning of the policy and [Insurance Code] section 11580.2[, subdivision (c)(2)]." (*Utah Home, supra,* 14 Cal.App.3d at p. 54.)

*Utah Home* did not suggest that an individual who was physically "upon" an insured vehicle was also required to have intent to enter or occupy the insured vehicle to be "upon" a vehicle within the meaning of section 11580.2; it implied the opposite. We agree with the result in *Utah Home* and the court's focus on the closeness of the connection between the individual's position and the insured vehicle and its use.

Atlantic Mutual's UM endorsement does not indicate that "upon" requires a person to have the intent to get into or occupy the insured vehicle. The Virginia cases cited by appellant are unpersuasive insofar as they require an injured individual to be performing "an act immediately related to occupancy of the vehicle" to be considered "upon" it. (*Edwards v. Government Employees Ins. Co., supra,* 500 S.E.2d at p. 822; see also *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Bristow, supra,* 150 S.E.2d at p. 128.) California cases have construed "upon" more broadly. Also, significantly, "insured" for purposes of UM coverage is not statutorily defined in reference to "occupying" a vehicle. (§ 11580.2, subd. (b).)

"The provisions of the statute are deemed part of every uninsured and underinsured motorist policy. [Citation.]" (*Quintano v. Mercury Casualty Co.*

(1995) 11 Cal.4th 1049, 1053 [48 Cal.Rptr.2d 1, 906 P.2d 1057].) "So long as an uninsured motorist policy grants benefits that are equal to or greater than the statutorily required benefits [under section 11580.2], ' "[t]he rights of the parties are to be determined by the terms of their policy . . . ." ' (*Utah Property & Casualty Ins. etc. Assn. v. United Services Auto. Assn.* (1991) 230 Cal.App.3d 1010, 1015 [281 Cal.Rptr. 917], citation omitted.)" (*American Nat. Property & Casualty Co. v. Julie R.* (1999) 76 Cal.App.4th 134, 138 [90 Cal.Rptr.2d 119], fn. omitted.) We cannot construe the meaning of "upon" under Atlantic Mutual's UM endorsement more narrowly than the Insurance Code merely because the endorsement uses "occupying" as shorthand for "in, upon, getting in, on, out or off."

The purpose of uninsured motorist coverage is " 'to protect one lawfully using the highway by assuring him of payment of a minimum amount of an award to him for bodily injury caused by the actionable fault of another driver.' [Citation.]" (*Hartford Fire Ins. Co. v. Macri* (1992) 4 Cal.4th 318, 324 [14 Cal.Rptr.2d 813, 842 P.2d 112].) "Cases uniformly hold that the statutes providing compensation for persons injured on the highways by uninsured motorists should be construed liberally in favor of coverage whenever possible to carry out the legislative objective. [Citations.]" (*Pugh v. State Farm Ins. Companies* (1991) 227 Cal.App.3d 816, 822 [278 Cal.Rptr. 149]; see *Hartford Casualty Ins. Co. v. Cancilla* (1994) 28 Cal.App.4th 1305, 1310 [34 Cal.Rptr.2d 302].) The meaning of "upon" must be understood with this in mind.

■ In this case, Ruiz was positioned immediately adjacent to Group Manufacturing's van for reasons essentially related to the insured vehicle and its use on the highway. When struck by the underinsured vehicle, Ruiz was attempting to speak to the van's driver regarding the multivehicle accident that had just occurred and had just helped an injured passenger exit. In light of the principle that ambiguities in a policy are generally construed against the insurer (*Palmer v. Truck Ins. Exchange, supra*, 21 Cal.4th at p. 1115) and the underlying public purpose of the uninsured motorist statute, we conclude that under the stipulated facts Ruiz, who was standing only about a foot from Group Manufacturing's van, was "upon" the van and qualified as an "insured" within the meaning of Atlantic Mutual's UM coverage provisions.

### 2. *American States' UM Endorsement*

Appellant Atlantic Mutual argues that Ruiz qualifies as an "insured" under American States' UM endorsement because Ruiz was "occupying" his employer's truck at the time of the accident. The argument is essentially that it is expected that Ruiz, as a driver involved in a multivehicle accident, would leave the vehicle and walk to another vehicle to check on the driver and

"exchange legally mandated information" and coverage should not arbitrarily turn on the distance that happens to exists between the vehicles after they have come to a stop. Atlantic Mutual maintains that "the litmus test for coverage" "is not physical distance" but "the claimaint's *intention with respect to the covered auto . . . .*" (Italics in original.)

Appellant Ruiz first claims that he is an "insured" under American States' UM endorsement because he is a truck driver for his employer, Fast UnderCar, and, therefore, qualifies as "you." Ruiz argues that "in light of" the exclusion in the UM endorsement for "[a]nyone using a vehicle without a reasonable belief that the person is entitled to do so," he *"as a driver for Fast Under Car [sic],* plainly fits the definition of 'You' under the policy." He also contends that he fit the statutory definition of "insured" as "any other person while in or upon or entering into or alighting from an insured motor vehicle" (§ 11580.2, subd. (b)) because he was permissively using his employer's truck and had only gotten out for the purpose of exchanging information with the driver of Group Manufacturing's van as required by law. Ruiz submits that California does not apply "a narrow, 'tape measure' standard."

■ The stipulated facts show that the American States policy was issued to Fast Pro, Inc., and Fast UnderCar, Inc., not Ruiz. As American States points out, its policy stated that " '[t]hroughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations' " and its declaration page provided that the named insureds are Fast Pro, Inc. and Fast UnderCar, Inc. Here, "you" is explicitly defined. Where insurance policy language is clear and explicit, it governs. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545]; see Civ. Code, § 1638.)

The cases cited by Atlantic Mutual and Ruiz do not support their position that "Ruiz" was "occupying" or "upon" the Fast UnderCar truck. *National Indemnity Co. v. Farmers Home Mutual Ins. Co.* (1979) 95 Cal.App.3d 102 [157 Cal.Rptr. 98], cited by both appellants, had nothing to do with the meaning of "occupying" or "upon" in relationship to a definition of "insured" for purposes of UM coverage. In *National Indemnity*, the automobile liability policy at issue provided coverage for damages that the insureds became legally obligated to pay because of " 'bodily injury, sickness or disease sustained by any person caused by accident and arising out of the ownership, maintenance or use of the [insured vehicle.]' " (*Id.* at p. 105.) The issue was whether bodily injury sustained by a minor passenger who was hit by a car after exiting the insured vehicle arose "out of the ownership, maintenance or use" of the vehicle where it was alleged that the driver negligently supervised and controlled the child during unloading. (*Id.* at pp. 106–109.) *National*

*Indemnity* does not stand for the proposition that physical distance is irrelevant to the meaning of "occupying" or "upon" for purposes of determining whether an individual qualifies as an "insured."

Neither *Cocking, supra,* 6 Cal.App.3d 965, cited by both appellants, nor *Wolf v. American Cas. Co. of Reading, Pa.* (1954) 2 Ill.App.2d 124 [118 N.E.2d 777], cited by Ruiz, indicates physical distance is never a determinative factor in evaluating whether an individual is "upon" an insured vehicle. Neither opinion addressed how close is close enough because both individuals were standing relatively close to the insured vehicle. The injured individual in *Cocking* was standing only one to four feet behind the insured vehicle. (*Cocking, supra,* 6 Cal.App.3d at p. 967.) The injured individual in *Wolf* was standing two or three feet in front of his car. (*Wolf v. American Cas. Co. of Reading, Pa., supra,* 118 N.E.2d at pp. 777–778.)

■ California cases recognize that "upon" connotes close physical proximity, regardless of intent to return to the vehicle after temporarily leaving it or intent to proceed directly to the vehicle and occupy it. In *Mullins v. Mayflower Ins. Co.* (1992) 9 Cal.App.4th 416 [11 Cal.Rptr.2d 635], a mother filed a declaratory relief action against an insurer to determine whether she could recover underinsured motorist benefits for a vehicular accident in which her son was killed. (*Id.* at p. 417.) Her son was struck by a drunk driver while he and other young men were walking along the highway shoulder to find a telephone after the insured vehicle in which they had been riding had pulled off the highway due to a flat tire. (*Id.* at p. 418.) At that time, the young men were about 50 feet down the highway from the car. (*Ibid.*) The uninsured and underinsured motorist coverage extended to "a person occupying an insured auto" and "occupying" was defined in the policy as " 'in, upon, getting in, on, out or off.' " (*Id.* at p. 418.)

The appellate court in *Mullins* reasoned that the son's death "did not result from his being in close proximity to the insured vehicle nor from his performance of acts ' "physically and directly related to the car" or its use.' [Citation.]" (*Mullins, supra,* 9 Cal.App.4th at p. 420.) It observed that the son "and the other young men had temporarily abandoned the vehicle and their intent was to seek a telephone some distance away. [Citation.]" (*Ibid.*) It concluded: "Appellant's test of allowing recovery to anyone who was injured before the person arrived safely at his or her destination strains both any reasonable interpretation of the definition of 'occupying' in the policy and existing legal precedent in uninsured and underinsured motorist cases." (*Id.* at p. 421.)

In another California case, a court held that a woman, who was struck by an uninsured motorist while she was crossing an intersection on her way to

the insured vehicle, "was not a 'person [injured] while in or entering into or alighting from an insured motor vehicle.' (Ins. Code, § 11580.2, subd. (b).)" (*Menchaca v. Farmers Insurance Exchange* (1976) 59 Cal.App.3d 117, 129 [130 Cal.Rptr. 607].) Relying on the principles enunciated in *Cocking*, the court stated that "although in the present case [the injured woman] testified that she *intended* to proceed directly to her car from the movie theater, her injuries did not result from her being in close proximity to the car or from her performance of acts 'physically and directly related to the car' or its use. [Citations.]" (*Ibid.*, italics added.)

In this case, as a result of the initial accident, Ruiz temporarily abandoned his employer's truck and intended to exchange information with the driver of Group Manufacturing's van before returning to the truck. The fact that he had good reason to leave the immediate vicinity of the truck does not support judicial expansion of the term "upon" beyond its commonsensical meaning.[5]

At some distance, an individual who exits a vehicle is no longer "upon" the vehicle in even a physical sense. Ruiz was approximately 200 feet, about two-thirds of a football field, away from the truck at the time he was struck by the underinsured motorist. Such a distance in no way qualifies as close proximity to the Fast UnderCar truck and a contrary conclusion would strain the meaning of the word "upon." "Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists. [Citations.]" (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 807 [180 Cal.Rptr. 628, 640 P.2d 764].)

Ruiz was not an "insured" within the meaning of the American States' UM endorsement since he was neither a named insured nor a person "in, upon, getting in, on, out or off" the Fast UnderCar truck.

### D. *Other Issues*

Given our conclusions, we need not resolve Atlantic Mutual's contention that it has no obligation to pay Ruiz's claim based upon the statutory exception provided by section 11580.2 (c)(2)[6] if we were to determine that Ruiz was injured while "occupying" Fast UnderCar's truck or Ruiz's contention that both insurers are obligated to pay its prorated portion of his loss.

---

[5] The parties dispute whether the statutory duty to exchange information applied to Ruiz. (See Veh. Code, §§ 20002, 20003; see also Veh. Code, § 40000.13, subd. (b).) In our view, whether or not Ruiz was acting under a statutory duty when he left the immediate vicinity of the truck is not determinative.

[6] See footnote 3, *ante.*

The judgment is affirmed. Both appellants shall bear their own costs and appellants shall bear respondent's costs.

Rushing, P. J., and Premo, J., concurred.

The petition of appellant Atlantic Mutual Ins. Co. for review by the Supreme Court was denied February 16, 2005.