[No. B186981. Second Dist., Div. Four. Mar. 3, 2006.]

JUAN F. GARCIA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ROBERT WEINBERGER et al., Real Parties in Interest.

COUNSEL

Lawrence C. Cruz for Petitioner.

No appearance for Respondent.

Wesierski & Zurek, Paul J. Lipman and Ronald Zurek for Real Parties in Interest Robert Weinberger, Weinberger Construction Company, Jorge Orosco and Walter Moran.

Kinkle, Rodiger & Spriggs, Scott B. Spriggs and William S. Fitch for Real Party in Interest Gilberto Molina.

OPINION

**EPSTEIN, P. J.**—A self-propelled piece of machinery fell off a dump truck while in the process of being transported as freight from one place to another. The owner, who was operating the device, was injured. We conclude that Proposition 213 (Civ. Code, § 3333.4) does not limit the owner's right to compensation for noneconomic damages.

## FACTUAL AND PROCEDURAL SUMMARY

The underlying facts are essentially undisputed, although there are sharp differences in the inferences and legal conclusions to be drawn from those facts. Following is a summary of what happened, as described by both sides in briefing before the trial court and this court.

The petitioner, Juan F. Garcia, owned a Snorkel International Snorkelift Articulating Telescoping Boom, which all parties and we refer to as a Snorkelift. The device is used to access places that are otherwise difficult to reach, such as a ceiling light bulb that is beyond reach of a ladder. It is mounted on four wheels, battery driven, and can reach a speed of four and one-half miles per hour. It is not designed for highway use. Garcia had the device at his home, in Pomona, parked on the street. He advertised it for sale. Robert Weinberger, a principal in Weinberger Construction Company, saw the ad and came to Garcia's residence to inspect it. He brought a flatbed dump truck owned by his construction company, with which he planned to haul off the Snorkelift if he succeeded in buying it from Garcia. Apparently, Weinberger liked what he saw. He and Garcia agreed on a price, and Weinberger and two of his employees (Walter Moran and Jose Orosco) tried to winch the Snorkelift onto the truck. The effort failed when a winch cable broke.

The solution was to hire a truck and driver to come to the scene and assist in loading the Snorkelift onto the truck. Garcia telephoned Gilberto Molina, the owner and operator of a flatbed tow truck with a tilt-bed, and asked him to come to the residence with the truck. The plan was to pull the Snorkelift to the level of the tow truck bed, back up the dump truck so that it articulated with the bed of the tow truck, then move the Snorkelift from the tow truck onto the dump truck. Weinberger had to leave the other business, so he left the tow truck operator and his emplyees to handle the job, with Garcia's help. Garcia agreed to drive the Snorkelift from the tow truck onto the dump truck.

Orosco backed up the dump truck so that the rear of its flatbed contacted the bed of the tow truck, creating a path along which the Snorkelift could be driven onto the dump truck. He then turned off the ignition and exited the dump truck. Unfortunately, the brakes allegedly were not set. As Garcia proceeded to drive the Snorkelift from the tow truck onto the dump truck, the dump truck rolled forward, creating an opening. The Snorkelift and Garcia fell into this opening onto the street, to the distress of both. Garcia suffered physical injury as a result, and sued Weinberger and Weinberger Construction Company (the Weinberger defendants), as well as the other individuals involved: Molina, Orosco, and Moran. The defendants filed answers and the issues were joined in the trial court proceedings.

Garcia did not have liability insurance with respect to the Snorkelift. The Weinberger defendants, together with Orosco and Moran, filed a motion in limine to preclude Garcia from claiming noneconomic damages. Molina joined in the motion. The motion was based on Proposition 213, adopted at the 1996 General Election, and Civil Code section 3333.4, which it enacted. (We refer to that statute simply as Section 3333.4.) Garcia raised procedural objections to the motion and, later, substantive objections. Further papers were filed by both sides. The court granted the in limine motion, ruling that the Snorkelift was a motor vehicle within the meaning of the Vehicle Code. The court set the case for jury trial.

Garcia then filed a petition with this court seeking a writ of mandate to overturn the trial court ruling that noneconomic damages are precluded by Section 3333.4. We issued an alternative writ, calling on real parties in interest to file opposition and affording Garcia an opportunity to file a response. They have done so. We shall issue the requested writ commanding the trial court to set aside the in limine ruling.

## DISCUSSION

As pertinent to this case, Section 3333.4, part of the Personal Responsibility Act of 1996, provides:

"(a) Except as provided in subdivision (c), in any action to recover damages arising out of the operation or use of a motor vehicle, a person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if any of the following applies:

"(1) . . .

"(2) The injured person was the owner of a vehicle involved in the accident and the vehicle was not insured as required by the financial responsibility laws of this state.

"(3) The injured person was the operator of a vehicle involved in the accident and the operator can not establish his or her financial responsibility as required by the financial responsibility laws of this state.

"(b) Except as provided in subdivision (c), an insurer shall not be liable, directly or indirectly, under a policy of liability or uninsured motorist insurance to indemnify for non-economic losses of a person injured as described in subdivision (a)."

(Section 3333.4, subdivisions (a)(1) and (c) are applicable to persons who are injured while operating a vehicle in violation of the drunk driving laws, and who are convicted of that crime. They are not at issue in this case.)

The initiative statute utilizes the common statutory mechanism of "borrowing" from another statute, in this case the financial responsibility law. The latter is found in article 1, chapter 1 of division 7 of the Vehicle Code, beginning with section 16000. (All further code citations, other than to Section 3333.4, are to the Vehicle Code unless another is indicated.) The key provision is section 16020, which, with exceptions not germane here, requires every driver and every owner of a motor vehicle to be able to establish financial responsibility and to carry evidence of financial responsibility in the form specified in the statute. In effect, the law requires that motorists and owners of vehicles involved in accidents that are within the scope of the statute be insured (or permissibly self-insured). The minimum amounts of the required coverage are specified in section 16056. No issue is raised over these provisions; the questions before us arise from the reporting requirements, into which the other provisions are tied.

The principal reporting provision is section 16000. As pertinent here, subdivision (a) requires "[t]he driver of a motor vehicle who is in any manner involved in an accident originating from the operation of the motor vehicle on a street or highway, or is involved in a reportable off-highway accident, as defined in Section 16000.1" involving property damage over $500, death or personal injury in any amount, to report the accident as specified in the statute.

Other provisions of the Vehicle Code define who is a "driver" (§ 305) or "owner" (§ 460), and what is a "motor vehicle" (§ 415), "street" (§ 590), "highway" (§ 360), and "vehicle" (§ 670).

It is not disputed that the Snorkelift was uninsured and that it satisfies the definition of "vehicle," since it is a device by which a person or property may be propelled or moved on a highway, and that it is a "motor vehicle" because it is self-propelled. Even though it is not designed for use on a public street or highway, and is not a device required to be registered with the Department of Motor Vehicles, we shall assume that it is a "motor vehicle" for purposes of Section 3333.4 and the financial responsibility law. (The parties dispute whether the Vehicle Code or Insurance Code section 11580.2 governs the definition of "motor vehicle"; for purposes of our decision, it does not matter.) Although the issue is disputed, we also shall assume without deciding that Garcia was the owner of the Snorkelift at the time of the accident.

Garcia has raised a procedural issue as to whether the recovery of noneconomic damages is cognizable in an in limine motion. We see no reason

why it is not. (See *Clemens v. American Warranty Corp.* (1987) 193 Cal.App.3d 444, 451 [238 Cal.Rptr. 339] [motion lies to exclude "any kind of evidence which could be objected to at trial, either as irrelevant or subject to discretionary exclusion as unduly prejudicial"]; see generally Wegner, et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2005) ¶ 4:220 et seq., p. 4-50 et seq.; and see *Yoshioka v. Superior Court* (1997) 58 Cal.App.4th 972, 978 [68 Cal.Rptr.2d 553], and *Goodson v. Perfect Fit Enterprises, Inc.* (1998) 67 Cal.App.4th 508, 511 [79 Cal.Rptr.2d 102], in which the procedure was used in § 3333.4 cases.)

Those matters aside, we turn to whether the accident "originat[ed] from the operation" of the Snorkelift "on a street or highway," as required by section 16000, subdivision (a). Garcia was "operating" the Snorkelift, since he was driving it from the tow truck onto the bed of the dump truck that had been backed up to the tow truck. The question is whether he was doing so "on" a street or highway.

■ Most of the applicable principles of statutory construction are summarized in *Kane v. Hurley* (1994) 30 Cal.App.4th 859, 862 [35 Cal.Rptr.2d 809], as quoted in *Cabral v. Los Angeles County Metropolitan Transportation Authority* (1998) 66 Cal.App.4th 907, 912 [78 Cal.Rptr.2d 385], a Section 3333.4 case: " ' "We begin with the fundamental rule that our primary task is to determine the lawmakers' intent. [Citation.] . . . To determine intent, ' "The court turns first to the words themselves for the answer." ' [Citations.] 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the [lawmakers] . . . .' " [Citation.] We give the language of the statute its "usual, ordinary import and accord significance, if possible, to every word, phrase and sentence in pursuance of the [lawmakers'] purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose . . . . Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." ' "

To this, we add that statutes should be construed with a dollop of common sense. (See *California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836]; *Wise v. Pacific Gas & Electric Co.* (1999) 77 Cal.App.4th 287, 299 [91 Cal.Rptr.2d 479].)

When is a vehicle operated or used "on" a street or highway? The preposition "on" is used in at least 14 different senses. (See Webster's New Internat. Dict. (3d ed. 1993) p. 1574 (Webster's).) Of these, the first

is "a function word to indicate position over and in contact with that which supports from beneath" as "the book is *on* the table," a structure "was built *on* an island," and a person "kept his hands *on* the desk." (*Ibid.*)

Garcia argues that the Snorkelift was not on a roadway, but was, instead, on the tow truck trying to reach the dump truck. At the time of the accident, it was already being positioned as freight to be transported to a different location. We have not found nor has any of the real parties cited us to authority holding that a vehicle being transported on another vehicle is "on" the road during the period of transit.

Real parties, however, point to another dictionary definition of "on." The dictionary we have cited, as well as others, uses it in the sense of "a function word to indicate position with regard to a place, direction, or time" such as "*on* the west are rolling plains." (Webster's, *supra*, at p. 1574.) The illustration urged by the Weinberger real parties is "near," as in "the town *on* the border." From this they argue that even though the Snorkelift was proceeding from the bed of the tow truck to the bed of the dump truck, and hence was not in contact with the road when the accident occurred, it was "near" the road, hence "on" the road. They cite *Atlantic Mutual Ins. Co. v. Ruiz* (2004) 123 Cal.App.4th 1197 [20 Cal.Rptr.3d 628] in support of this construction.

*Atlantic Mutual* is an uninsured motorist case, involving an underinsured motorist. The plaintiff Ruiz was an employee driving a vehicle owned by his employer. He was rear-ended by a Toyota Camry, and then collided with a van driven by the employee of a third party. Ruiz exited the vehicle he was driving and walked some 200 feet to the van to check on the driver there and to exchange insurance information. He planned to return to his vehicle after that and wait for police to arrive. It appeared to him that a passenger in the van was injured, and he helped that person exit the van. Then, while standing about a foot away from the van, talking to its driver, Ruiz was struck and injured by another vehicle, driven by an underinsured motorist. Ruiz had not entered the van. (*Atlantic Mutual Ins. Co. v. Ruiz, supra*, 123 Cal.App.4th at p. 1200.) He sought to recover under the uninsured motorist provisions of his employer's policy as well as under the policy covering the van. Atlantic Mutual issued the policy covering the van. As usual in insurance cases, coverage depended on a chain of definitional provisions. The key word was "occupying": whether Ruiz was occupying the van at the time of the accident depended on its meaning. The term was defined to mean " 'in, upon, getting in, or, out or off.' " The term possibly applying to Ruiz was "upon." (*Id.* at p. 1202.) The court reasoned that "upon" in modern usage is the equivalent of "on," and looked to a dictionary definition of the latter as " '[i]n proximity to; close to, beside, near, by, at; on the bank of (a river or lake), on the coast of (the sea).' " (*Id.* at p. 1204, quoting 1 Oxford English Dict. (1971)

p. 1988.) The court also recognized the definition of the word as a function term meaning in contact with: " 'proximity: *a town on the border.*' " (*Id.* at p. 1204.)

The policy did not clarify the sense in which "upon" was used, and only a few cases were found that bore on the issue. (*Atlantic Mutual Ins. Co. v. Ruiz, supra,* 123 Cal.App.4th at pp. 1204–1208.) The court therefore construed the term in light of the primary purpose of the uninsured motorist law. (*Id.* at p. 1209.) It concluded that since Ruiz was positioned just outside the van and was there for reasons essentially related to the insured vehicle and its use on the highway when he was struck by the underinsured motorist, "[i]n light of the principle that ambiguities in a policy are generally construed against the insurer [citation] and the underlying public purpose of the uninsured motorist statute," he was "upon" the van when he was struck. (*Id.* at p. 1211.)

The limited nature of this holding is apparent by comparing it with the conclusion reached with respect to the policy covering the vehicle Ruiz was driving. The court held that he was not occupying or upon that vehicle when struck by the underinsured motorist's vehicle because "upon" connotes close physical proximity, regardless of intent to return to the covered vehicle. (*Atlantic Mutual Ins. Co. v. Ruiz, supra,* 123 Cal.App.4th at p. 1213.) Even though he was still at the accident scene, the court reasoned that Ruiz had temporarily abandoned the vehicle he was driving when the accident occurred, so he was no longer "upon" that vehicle. (*Id.* at p. 1214.)

There is no doubt that Garcia was "upon" the Snorkelift when the accident occurred, but that does not mean that he was "on" or "upon" the roadway (until he landed there as a result of the accident). The public policy reasons that led to the decisions in *Atlantic Mutual* have nothing to do with this case, in which the uninsured motorist law has no application.

Real party Molina finds support for his argument that the Snorkelift was being operated on a highway in a 1949 published opinion of the California Attorney General. (13 Ops.Cal.Atty.Gen. 64 (1949).) One of the questions addressed in that opinion was whether the financial responsibility law requires reports for "accidents occurring on open fields, private roads, military reservations and waterways within the State of California." (*Id.* at p. 67.) The question essentially asked was whether the law applied to off-road accidents. The Attorney General answered in the affirmative, except with respect to military reservations over which the United States has exclusive jurisdiction. He based his conclusion on the language of the statute then in force, former Vehicle Code section 419, which applied the law to the operator of a motor vehicle which is in " '*any manner involved in an accident within this State.*' " (13 Ops.Cal.Atty.Gen. at p. 67.) That language no longer appears in the

financial responsibility law. It is now supplanted by section 16000.1, which makes an off-highway accident reportable, subject to the limitation that it involve a vehicle subject to registration under the Vehicle Code. (§ 16000.1, subd. (a)(2).) As we have discussed, the Snorkelift is not subject to registration. (Understandably, none of the parties relies on section 16000.1.)

If the position of real parties were correct, a person mowing a front lawn with an uninsured mechanized mower, who somehow was knocked over and injured, would be limited to economic damages against the tortfeasor, because he operated the mower "on" (i.e., "near") the street.[1] The fact is that the Snorkelift was in the process of being transported by truck from the place of sale to the buyer's premises. It already had been lifted off the ground and was being driven from the bed of the tow truck onto the articulated bed of the truck that was to transport it. It cannot be plausibly concluded that the device was being operated or used on a street or highway. There was a vehicle that was being so used, however. It was the truck whose brake allegedly was not set.

■ The same result is reached on the basis of the intent and purposes of Proposition 213. These are most authoritatively set out in *Hodges v. Superior Court* (1999) 21 Cal.4th 109 [86 Cal.Rptr.2d 884, 980 P.2d 433], on which both sides rely. *Hodges* is a products case against an automobile manufacturer, whose product malfunctioned causing injury to an uninsured motorist who was operating the vehicle on a highway. The manufacturer argued that since the plaintiff was operating a motor vehicle on a highway and was uninsured at the time, all of the elements of Section 3333.4 were in place, so that his damages should exclude noneconomic losses. A literal reading of the statute could support that conclusion. But the statutory language was "not pellucid," particularly the requirement that the injury "arise out of" operation of the vehicle. (21 Cal.4th at p. 113.) Quoting from an earlier decision, the court reiterated that in seeking the meaning of a statute it is not enough " 'simply to look up dictionary definitions and then stitch together the results.' " Instead, the court must " 'discern the sense of the statute, and therefore its words, *in the legal and broader culture.*' " (*Ibid.*) The court looked to the purpose of Proposition 213, as revealed by the materials published in the Ballot Pamphlet for the 1996 General Election. The primary objective of the statute, as revealed by these sources, was to limit automobile insurance claims by uninsured

---

[1] The claim is reminiscent of a famous story told about Henry Miller, the 19th century California land baron. Learning of a federal law allowing anyone to claim federal swamp land free if it was under water and traversable by boat, Miller had a rowboat hauled onto a buckboard, got into the boat, and had the wagon driven around the land he wanted to claim, which was mostly high and dry. He made the claim, backing it with a sworn statement that he had traversed the area "on" a boat. His claim, reportedly, was approved. (The tale is told in many places, with variations. This version is from the May 1967 issue of American Heritage Magazine.)

motorists so that such persons "who contribute nothing to the insurance pool, would be restricted in what they receive from it." (21 Cal.4th at p. 115.) A design defect in a motor vehicle was not the sort of thing the electorate had in mind in adopting the initiative. (*Id.* at p. 118.)

So here, the purpose of preventing uninsured motorists from reaping benefits from an insurance pool to which they did not contribute is unrelated to the owners or operators of vehicles that are in the process of being transported on other vehicles from one place to another. It is the transporting vehicles that must be insured, not the vehicles that are transported.

■ Hence, we conclude, both from the point of view of the literal language of the statute and from examination of its purpose, that it does not apply to the Snorkelift once that device was removed from the road and placed as freight for transportation to another site.

## DISPOSITION

Let a writ issue directing respondent court to vacate its in limine ruling and to proceed in conformity with this opinion. Petitioner to have his costs on appeal.

Curry, J., and Hastings, J.,[*] concurred.

On March 27, 2006, the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied May 24, 2006, S142611.

---

[*]Retired Associate Justice of the Court of Appeal, Second Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.